———o———

HENRY M. DURKEE, Appellant, vs. AARON K. CHAMBERS, Respondent.

1. *Assignments, fraudulent—Knowledge as to fraud by assignee.*—A *bona fide* assignee for value will not be affected by the fraudulent intent of his assignor, of which he has no knowledge. Knowledge of the mere fact of the assignor's indebtedness at the time of the transfer will not be sufficient to defeat it.

2. *Practice, civil—Witnesses, credibility of—Jury.*—The credibility of witnesses must be passed upon by the jury.

3. *Equity—Special verdict—Chancellor not bound by.*—The chancellor is not bound by the verdict of a jury on special issues submitted to them.

4. *Equity—Decree— Reversal of action by Supreme Court—What proper.*— Where the order or decree of a chancellor is reversed on appeal, the Supreme Court ought to render such decree as may be right upon a review of the whole record.

*Appeal from Scotland Circuit Court.*

*E. G. Pratt, J. C. Anderson & H. M. Durkee,* for Appellant.

*Birch & Mackey,* for Respondent.

NAPTON, Judge, delivered the opinion of the court.

This proceeding was commenced in the Circuit Court of Scotland county in 1872, to subject certain lands in that county, to which defendant had the legal title, to the payment of certain claims belonging to the plaintiff.

It seems that one Allen, the father-in-law of the defendant, Chambers, lived in Callaway county, and had a note upon one Woods, for $3,250.00, dated in 1857 and secured by a mortgage on a tract of land in Scotland county. Suit was instituted on this note and mortgage in 1852, in Scotland county, and was pending in 1862, when Allen went up to Scotland county and sold the note and mortgage to his son-in-law, the defendant, who then had been living in this county for several years, though previously a citizen of Fulton in Callaway county, and residing during the years 1857, '8, '9, partly at the house of Allen.

Allen's property in Callaway county was not sufficient to pay his debts, in 1862. The suit against Woods by Allen, was, immediately after the transfer to Chambers, continued in Chamber's name, and was not finally determined until 1870. A credit of $2,000 on the note, besides some small credits indorsed on it, was claimed, and the title to a portion of the tract of land was disputed, and claimed by the heirs of Cadwell. This suit was carried on by defendant, at considerable expense, and loss of time and personal attention on his part, and was ultimately compromised or settled by the defendant's buying up the Cadwell title, and procuring a deed from the mortgagor Woods, to the entire tract.

The creditors in Callaway then assigned to the present plaintiff their claims against Allen, and upon these judgments had executions issued, and the land levied on

and sold as Allen's land ; and this suit is brought to set aside Chambers' title, on the ground that the purchase by him was a fraudulent contrivance on the part of Allen and Chambers to hinder, delay and defraud these creditors.

From the bill of exceptions it appears that certain issues involved by the petition and answer, were agreed on and submitted to a jury. These issues were :

1st. That on the 1st day of May, 1862, and prior and subsequent thereto, said Thomas D. Allen was largely indebted to Robert H. Damon and others, of which said indebtedness defendant, Chambers, had full notice. Plaintiff affirms, and defendant denies.

2d. That for the purpose of hindering and delaying his said creditors, the said Thomas D. Allen assigned to the said Aaron K. Chambers a certain promissory note for the sum of $3,250 dated, etc., secured by a mortgage, etc.

3rd. That the said defendant, A. K. Chambers, conspiring with said Allen to hinder, delay and defraud, and for the purpose of enabling the said Allen to hinder, delay and defraud his said creditors, took and received the said assignment and note to himself, and claimed to be the sole and exclusive owner thereof, when in truth and in fact the said Thomas D. Allen was the owner thereof.

These issues, it will be perceived, did not involve any question in regard to the assignment having been made for a valuable consideration, though the petition so claimed, and asserted the assignment to have been purely voluntary and without any consideration whatever, and the instructions of plaintiff are also based on the assumption that the assignment was not voluntary, and the evidence undoubtedly showed a valuable consideration, concerning the adequacy of which however there was a dispute and a conflict of testimony.

The instructions given for the plaintiff and defendant are only important as showing the theory of law on which the court submitted the issues to a jury.

The instructions given for the plaintiff were :

1st. "If the jury believe from the evidence that on the 7th day of May, 1862, and prior and subsequent thereto, one Thomas D. Allen was indebted to Damon, etc.; and that defendant had notice of the indebtedness, the jury will find the first issue for the plaintiff." 2nd. "If the jury believe from the evidence, that, for the purpose of delaying and hindering his creditors, the said Thomas D. Allen assigned to the said Chambers a certain promissory note, etc., they will find the second issue for plaintiff." 3rd. "If the jury shall believe from the evidence, that Chambers took the assignment from Allen for the purpose of enabling Allen to delay his creditors, they will find the third issue for plaintiff." The 4th is a mere statement of what the pleadings admit. 5th. "If the jury believe that defendant Chambers conspired with Thomas D. Allen to hinder and delay his creditors, or to enable the said Allen to hinder or delay his creditors, and received to himself the note and mortgage assigned, and claimed to be the owner thereof, they will find the third issue for plaintiff. 6th. "If the jury believe that Chambers paid a full consideration for the assignment from Allen, yet if the jury further believe that Chambers intended thereby to enable the said Allen to hinder, delay or defraud his creditors, they will find the third issue for plaintiff."

Four instructions were given for defendant:

1st. "If the jury find that the defendant Chambers, did purchase in good faith the said promissory note and mortgage of the said Thomas D. Allen, and also the interest of the said Thomas D. Allen in the suit then pending in Scotland Circuit Court thereon, for a valuable consideration paid or agreed to be paid, they will find for defendant on the second issue submitted, unless they further find that the same was done by the said Allen to hinder, delay and defraud his creditors; and that defendant Chambers had notice thereof." 2nd. "Though the jury find from the evidence, that the consideration for which the assignment of the note and mortgage was made, was less than the actual value of the land on which said mortgage was given, yet said assignment was valid in law and does not

authorize the jury on that account to find for the defendant, unless they further find from the evidence, that the said Allen conspired with the said Chambers, to hinder, delay or defraud said Allen's creditors, and did so enter into said contract and assignment for that purpose, they will find for defendant on the third issue." 3rd. "Although the jury find that Allen, now deceased, did, for the purpose of hindering or delaying his creditors, assign to the defendant a promissory note, etc., unless they also find that said defendant had notice of Allen's indebtedness, they will find for defendant on the second issue." 4th. "If the jury find that the said Allen was largely indebted to Damon, etc., in Callaway county, yet unless they further find that these debts were subsisting at the time of the transfer, and that defendant Chambers had notice, etc., they will find for defendant."

These instructions taken singly are very defective. For instance, the second instruction given for plaintiff is manifestly not the law, if designed to convey the doctrine that a *bona fide* assignee for value would be affected by the fraudulent intent of his assignor, of which he had no knowledge. But it is apparent from the other instructions on both sides, that such was not the design of the instructions.

The real question for the jury to determine was, whether this purchase was *bona fide* and for a valuable consideration, or was made on the part of Chambers to aid Allen in covering up the property from his creditors. And the third instruction given for defendant was erroneous, as it seems to maintain that defendant's knowledge of Allen's indebtedness, although the purchase was in good faith and for full value, would defeat the assignment. But, taking the instructions together, they present the law fairly to the jury on the issues, certainly favorably to the plaintiff.

In regard to the evidence in this case, it is unnecessary to notice its details. It was contradictory in regard to important facts, and in the main presented a mere question of credibility of witnesses, of which the court and jury that tried the case were the most competent judges.

The testimony of Allen, in the form of a deposition taken before the trial, was read without objection, and, if believed, clearly proved a case of concerted fraud. But the jury evidently disregarded his evidence, because in the trial of the case of Chambers vs. Woods, (in the Scotland county Circuit Court) he had testified to just the reverse and had sworn that he had no interest whatever in the land or the suit, and never had any intention of defrauding his creditors.

But a most important and striking fact in this case, and one which doubtless largely influenced the jury and the court, is that the purchase of defendant was really and substantially a purchase of a lawsuit which had been progressing for three years at the date of his purchase, and continued eight years longer, before its final determination.

The suit of Allen vs. Woods, was instituted in 1859. The purchase was made in 1862, and the suit finally ended by compromise in 1870.

It does not clearly appear what difficulties occasioned this delay, as the record of this case of Allen vs. Woods, and subsequently Chambers vs. Woods, is not in evidence. But it seems that one of the defenses was a payment of $2,000, over and above the credits on the face of the note, and that there was a defect in the title to one 80 acres tract of the land, which it ultimately cost the defendant $600 to remedy.

Had the defense succeeded in establishing these two claims, it is obvious that the defendant would have a bad bargain in his purchase from Allen, since it is clear that he gave Allen $250, and paid out in lawyers fees considerable sums, amounting to $500 or $600, and devoted a large portion of his time and labor for eight years to a prosecution of the suit. It is therefore hard to say that the consideration given in 1862, for this assignment, was inadequate.

To compare the actual value of the land in 1862, with the amount advanced in that year, would not constitute a fair criterion to determine the question of adequacy or inadequacy of price.

Durkee v. Chambers.

There is another prominent fact in this case which must have had its influence. The plaintiff in this case represents creditors whose claims are said to have accrued long anterior to 1862. Yet notwithstanding this assignment in 1862, and the continued prosecution of the suit against Woods, from that date until 1870, no attempt was made by the creditors of Allen to question this assignment, yet it is evident from the offer in the case to prove Allen's admissions of insolvency, prior to 1862, that the creditors knew all the facts then, that they did on the institution of this suit.

This delay ought to have been accounted for, but was not, and it was not until eight years after his purchase that this attempt was made to establish it as fraudulent.

A point was made on the trial in relation to the admissions of Allen prior to his assignment. These admissions were excluded. There is no doubt that such admissions, so far as Allen is concerned, would have been good evidence against him, but Allen was not a party to the case, the suit having been dismissed as to him before the trial, and unless they had been made in the presence of the defendant, thereby going to establish his complicity in the fraud, they could not be of any value. Besides, Allen's deposition was read rendering such admissions totally irrelevant and useless, as Allen in his deposition confesses the fraud. Whether, therefore, this evidence had been admitted or rejected, its admission or rejection could have no influence on the result.

The Circuit Court, in trying cases of this character is not bound by the verdict of the jury; but if the verdict is to be disregarded, it would seem a useless expense to submit the issues to the jury. This court undoubtedly may upon the whole record, render such decree as may be thought right, and where a judgment of this kind is reversed, such course ought to be taken.

In this case we are unable to see that any serious error was committed on the trial, or that any different conclusion could be reached on the evidence reported.

We shall therefore affirm the judgment. The other judges concur.