E. H. MUNFORD, Appellant, v. H. J. SHELDON, LYNN E. BOWMAN and MRS. LYNN E. BOWMAN.—9 S. W. (2d) 907.

Division One, July 30, 1928.

1078

*John Davis, Nelson H. Davis* and *Davis & Davis* for appellant.

*Ed E. Aleshire* for respondents.

GENTRY, J.—By bill in equity filed in the Circuit Court of Jackson County on April 16, 1925, plaintiff, a judgment creditor of defendant Sheldon, sought to set aside a deed made to defendant Lynn E. Bowman, alleging that the same was a fraudulent conveyance. The wife of Bowman was also made a defendant. The substance of plaintiff's bill was that he was the holder of a note for $1200 dated

May 14, 1924, due in six months, at six per cent interest, executed to him by defendant Sheldon; that the note became due and remained unpaid and that he filed suit thereon in the Circuit Court of Jackson County on April 1, 1925. That the same was an attachment suit, and that on April 10, 1925, the sheriff attached certain real estate, hereinafter for convenience .called the Sedgwick Place property in Kansas City. He further alleged that defendant Sheldon owned certain real estate in Kansas City, for convenience hereinafter designated as the Virginia Avenue property, but that he carried the title thereto in the name of his mother, Millie Fry, for the purpose of defrauding his creditors. That on March 18, 1925, defendant Sheldon, acting for himself and as attorney in fact for Millie Fry, conveyed said Virginia Avenue property to Georgia A. Moore and husband, in exchange for certain property, for convenience hereinafter called the Sedgwick Place property, in Kansas City, but that said deed was not delivered and recorded until April 3, 1925. That by reason of such exchange, the Sedgwick Place property became the property of defendant Sheldon, although the same was conveyed to defendant Bowman by Georgia A. Moore and husband. That while the record title thereto was in the defendant Bowman, "defendant Bowman is holding said Lot 17, Block One, Sedgwick Place, for and in behalf of defendant Sheldon; all of which is a fraudulent conveyance and contrary to law and was made for the purpose of defrauding and cheating plaintiff. That said lot, as a matter of fact. is the property of defendant Sheldon." Then followed an allegation that by reason of such transfer and by reason of the title of the same being carried in the name of defendant Bowman for defendant Sheldon, by reason of the authority given in Section 1775, Revised Statutes 1919, plaintiff was entitled to bring this bill for relief from said fraudulent transfer. The prayer of the bill was as follows:

"Wherefore, plaintiff prays the court that said fraudulent transfer aforesaid of lot seventeen (17) Block One (1) Sedgwick Place in Kansas City, Missouri, as evidenced by the deed of conveyance recorded April 3, 1925, in Book B 2545 at page 279, be declared a fraudulent and void transfer and that same be set aside and declared for naught and that said lot seventeen (17) Block One (1) Sedgwick Place be declared to be the property of defendant H. J. Sheldon and be declared subject to plaintiff's attachment as heretofore filed, same being a suit pending in this court under number 211956, and for such other and further relief as to the court may seem meet and proper."

The answer of defendant Sheldon was a general denial, though he did not appear at the trial either in person or by attorney. The answer of defendant Bowman and wife admitted that the Sedgwick Place property was conveyed to defendant Bowman on April 3, 1925,

but alleged that said conveyance was made in the regular way for a valuable consideration, without notice of any prior or preceding claim, but in good faith. A reply put in issue the allegations of the last-named answer, and further alleged that the title to this property was conveyed to defendant Bowman for the purpose of hindering and delaying the creditors of defendant Sheldon, and that there was a secret agreement between them. There was an intervening petition filed by William M. Janney, in which it was stated that he had a judgment against defendant Sheldon for $2500 which was obtained on February 25, 1924, in the Circuit Court of Jackson County.

The chancellor, after duly considering the case, dismissed plaintiff's bill; and plaintiff, after complying with the usual formalities, has appealed.

There is no dispute about the facts. Defendant Sheldon did not testify; and the other defendants offered no evidence but stood on the case made by the plaintiff. The evidence shows that the plaintiff instituted a suit by attachment against defendant Sheldon, founded on the $1200 note, said suit being filed on March 31, 1925. On April 2, 1925, summons was served on defendant Sheldon and on April 10, 1925, the real estate here in controversy was attached by the sheriff. Judgment by default was later rendered in favor of the plaintiff in this suit, for $1356, which judgment has not been paid.

Title to certain real estate, for convenience called the Virginia Avenue property, was shown to be in Millie Fry, the mother of defendant Sheldon, although the property had been purchased by said defendant. The title was taken in the name of his mother because of debts owed by him, he acting as attorney in fact for his mother in the conveyance of this and other property. The deed dated April 1, 1925, executed by Georgia A. Moore and husband to defendant Bowman, conveying the Sedgwick Place property in consideration of one dollar and other goods and valuable considerations, was offered in evidence. This conveyance stated that it was subject to a deed of trust given to secure a note for $4000, and the deed was acknowledged April 3, 1925. The deed from Millie Fry to Georgia A. Moore was also offered; it was signed by defendant Sheldon as attorney in fact for Millie Fry and acknowledged before the same notary public on the same date as the deed above mentioned. The consideration was one dollar and other considerations.

Defendant Sheldon was in the real estate business, and defendant Bowman was a plumbing and heating contractor, also engaged to some extent in the real estate business. Bowman did work on various houses for Sheldon, the titles to which were in other parties, and when a settlement was had between them, it was ascertained that Sheldon owed Bowman $2650, for which a note was given in Decem-

ber, 1924, Bowman waiving his lien rights by the acceptance of such note. This note was secured by a collateral note for $4000 which was secured by a second mortgage on the Virginia Avenue property. About April 1, 1925, defendant Sheldon suggested to defendant Bowman that he would like to transfer the indebtedness from the Virginia Avenue property to the Sedgwick Place property, which, after some discussion, was agreed to; Mr. Vardaman, of the Missouri Abstract Company, being employed to prepare the necessary papers. As a part of the same transaction, a contract was executed by the two defendants which is as follows:

April 3, 1925.

Mr. Harry J. Sheldon,
Kansas City, Mo.
Dear Sir:—

In accordance with agreement this day entered into with you and in consideration of $1.00 to me in hand paid, receipt of which I do hereby acknowledge, I hereby give and grant to you the exclusive option to purchase Lot 17, Block 1, Sedgwick Place, an addition to Kansas City, Missouri, at and for the sum of $8000 cash.

It is understood that the property above described is now subject to a deed of trust securing a principal note for $4000 payable to Prudential Insurance Company of America, said deed of trust being recorded in Book B. 2288, at Page 404, and any conveyance to be executed by me will be made subject to the lien of this deed of trust, which shall be taken into consideration as a part of the above named sale price.

This option shall extend and be in force for a period not exceeding ninety days from this date, and after the expiration of said period of ninety days shall be of no force and effect.

(Signed)  LYNN E. BOWMAN,
H. J. SHELDON,

I hereby release you from all claims in the above property.
(Signed)  H. J. SHELDON.

This is the alleged "secret trust," upon which plaintiff bases his claim of fraud, on account of which he asks relief. It is further in evidence that the Sedgwick Place property was worth $10,000, that defendant Sheldon owed defendant Bowman at that time $2650 on the note aforesaid, and $110 interest, and that Bowman advanced Sheldon $700 in cash with the understanding that if Sheldon bought the place back, Bowman was to have $540 as a bonus. There was a first mortgage on the Sedgwick Place property amounting to $4000. It was then further agreed that if Bowman could sell this property for $10,000 as it seemed likely that he could, he was to pay Sheldon $2000 out of the proceeds of such sale. After the equity suit was filed,

Sheldon wrote the clause at the bottom of the above agreement, "I hereby release you from all claims in the above property." Other facts were developed at the trial not material to the issues herein.

I. Counsel for respondent argued that his objection to the introduction of any evidence under the petition should have been sustained because it did not state facts sufficient to constitute a legal cause of action. This objection was made when the first witness for plaintiff took the stand and before the introduction of any evidence. On that subject, Judge VALLIANT, speaking for this court, said: "When the defendant files an answer and puts in issue the averments of the petition without having previously challenged their sufficiency, it is too late to do so after the jury is sworn, if the language in the petition is susceptible of a construction that states a cause of action. [Duerst v. Stamping Co., 163 Mo. l. c. 621.] To the same effect, see opinion of Judge BLACK in Young v. Iron Co., 103 Mo. l. c. 327, and opinion of Judge THOMAS, in McDermott v. Claas, 104 Mo. l. c. 21, wherein he termed such an objection as "cut-throat practice at best." Referring then to the petition, or bill, the substance of which is herein set forth, it will be seen that it did state a cause of action; and that the court properly overruled defendant's objection to the introduction of any evidence.

II. Much space is devoted in the briefs of counsel on both sides as to whether or not the conveyance in question was intended to be a mortgage, and whether or not it thereby became a mortgage, and the law appropriate to that subject has been argued at length. Whether this conveyance was in reality a mortgage or not need not be discussed, for such an allegation does not appear in plaintiff's bill, and there is no prayer in the bill asking the court to construe such conveyance to be a mortgage. And in the answer nothing is said about the conveyance being a mortgage. Hence, this court is limited to the issues contained in the pleading, as was the trial court. On that subject, Judge LAMM well said: "Proof and allegation must correspond, and that no recovery be had on a new or a different cause of action than that chalked out in the written pleadings." [Mark v. Cooperage Co., 204 Mo. l. c. 262; Henry County v. Citizens Bank, 208 Mo. l. c. 225.]

III. For many years, courts and text-writers have agreed that fraud need not be proved by direct evidence, but that it may be inferred from circumstances. This, because a party about to execute a fraudulent conveyance does not announce that fact publicly nor make known his purpose to his unsecured creditors.

1084

The various ways of discovering fraud in a conveyance have often been discussed by law-writers, and all of them agree that no matter what the plan resorted to, if it results in hindering and delaying the creditors of the debtor, and if the grantee, although a bona-fide creditor, participates in shielding the debtor or in favoring him at the expense of other creditors, the conveyance is of the character denounced by our statute as fraudulent. Proof in such cases, as counsel and courts well know, is usually by proof of certain circumstances, known as "badges of fraud," some of which may appear to be of minor importance, but when combined furnish clear evidence of fraud as well as participation in such fraud by the favored creditor.

(a) Insolvency, in connection with other facts, will affect the purchaser with notice of fraudulent intent on the part of the grantor. [State ex rel. v. Merritt, 70 Mo. 1. c. 284; 1 Moore on Fraudulent Conveyances, p. 249; Adams on Equity, p. 147.]

(b) "There is no doubt that inadequacy of price in the sale of property by an insolvent debtor is a badge of fraud; but it is not regarded sufficient alone to raise a legal inference of fraud, unless so grossly so as to 'strike the understanding at once with the conviction that such a sale never could have been made in good faith.'" [State ex rel. v. Mason, 112 Mo. 1. c. 381; Bump on Fraudulent Conveyances, pp. 44-5; 8 Am. and Eng. Enc. of Law, p. 760.] "A conveyance must be for a good consideration and bona-fide; if defective in either particular it is void as to creditors." [1 Story on Eq. Jur. sec. 353; Bispham on Equity (4 Ed.) p. 308; Kerr on Fraud and Mistake, p. 199.]

(c) "Any unusual clause in an instrument, any unusual method of transacting the business, apparently done to give the transaction an air of honesty and good faith, is of itself a badge of fraud; for, 'when the part is overacted, the delusion is broken and the fiction appears.'" [Snell v. Harrison, 104 Mo. 158.] "Any unusual method of transacting the business always carries with it its own unfavorable presumptions; human experience having demonstrated, that in attaining its ends, honest purpose never travels a crooked road." [Hodge v. Huff, 94 Mo. 1. c. 503.] If the entire transaction was one out of the usual course of business, and the grantees well knew it, this is a circumstance of fraudulent intent. [Van Raalte v. Harrington, 101 Mo. 1. c. 608.]

(d) "A deed, though absolute on its face, but subject to a secret trust in favor of certain creditors, is fraudulent and voidable be-

cause it is designed and intended to delay creditors.'' [Perisho v. Quinn, 52 Ill. App. 102; Bank v. Powers, 134 Mo. 1. c. 447; Roberts v. Barnes, 127 Mo. 1. c. 416.] ''It is settled law in this State that when it appears upon the face of any conveyance that it is a secret trust for the grantor, the court will declare it void as a matter of law.'' [McDonald v. Hoover, 142 Mo. 1. c. 495; Rubber Mfg. Co. v. Supply Co., 149 Mo. 1. c. 551; Bigelow on Fraudulent Conveyances, p. 260; 20 Cyc. p. 566.] It matters not whether evidence of the secret trust appears from the deed itself, or is disclosed from other evidence, the transaction is fraudulent. [Bank v. Powers, supra; Barton v. Sitlington, 128 Mo. 1. c. 172; Wait on Fraudulent Conveyances and Creditors Bills, sec. 234a.]

(e) ''The law will not suffer a creditor, although he may have a just demand against his debtor, to use that debt as a screen to protect the debtor's estate from his other creditors.'' [Kuykendall v. McDonald, 15 Mo. 1. c. 420; McVeagh v. Baxter, 82 Mo. 1. c. 521.]

(f) The acceptance of property in excess of the amount due renders the entire conveyance void as against creditors. [Imhoff v. McArthur, 146 Mo. 1. c. 378.]

(g) Where a part of the indebtedness or a part of the consideration for the execution of a deed is fraudulent the whole transaction is tainted with fraud. [Boland v. Ross, 120 Mo. 1. c. 217; Tube Works v. Machine Company, 118 Mo. 1. c. 376; Barton v. Sitlington, supra.]

(h) The evidence shows that defendant Bowman knew that defendant Sheldon was in need of money, that Sheldon owed a number of claims and that there was a third deed of trust on the Virginia Avenue property. At the time of the execution of the alleged fraudulent deed. Bowman loaned Sheldon $700 additional to pay some of those claims. So the insolvency of Sheldon was known to Bowman at the time this conveyance was executed. The evidence also shows that Sheldon, while thus in debt, had the title to some of his property in his mother's name and that Bowman did not take a deed of trust to secure the money actually due him but accepted of a deed absolute on its face, and subject to a secret trust agreement, and a verbal agreement. This trust agreement must be read into the deed, and so must the verbal agreement to give Sheldon $2000 of the proceeds of the sale if the property could be sold for $10,000. The effect of all this was to place this property of Sheldon's beyond the reach of his other creditors, to all of which Bowman was a party. This trust agreement was not filed for record. Hence, as above stated, the

conveyance to Bowman was apparently an absolute one. Why Bowman accepted of a deed to the equity of this property when he only had $3400 in it can only be accounted for by the fact that he was trying to shield Sheldon and prevent the other creditors from seizing this property. The reason offered by Bowman for not taking a deed of trust on the Sedgwick Place property was that he "didn't want to examine any more abstracts;" which is no reason at all, for he afterwards admitted that he had the abstract of title examined before he accepted of the deed to this property. This secret trust agreement and the verbal agreement between the parties had the effect of shielding Sheldon's property from his creditors; and we must presume that the parties thereto knew what that effect would be and intended the natural result of their own acts. Again, the deed to Bowman contained a statement that the consideration was one dollar and other considerations, thereby concealing from the plaintiff and other creditors the true transaction between the parties. If said deed had recited the facts, disclosed by the evidence in this case, plaintiff and the other creditors would have known that Sheldon had an interest in the property and that the same was subject to the payment of his debts. The concealment of the truth is a strong circumstance against the fairness of the transaction.

In view of the insolvency of Sheldon, the unusual transaction between him and Bowman, the concealment of the truth as herein stated, the result accomplished of keeping off creditors, and the secret arrangement by which Bowman expected to get a $540 bonus, and Sheldon expected to get $2000. money that should have been used to pay Sheldon's honest debts, there can be no escape from the conclusion that the deed in question was executed by Sheldon for the purpose of hindering, delaying and defrauding his creditors, and that Bowman participated in such unlawful purpose.

IV. Counsel for respondents insist that even if the allegations of plaintiff's petition be true and if the prayer of his petition should be sustained, "it would have the effect of setting aside the deed from Moore to Bowman, which would leave the Forrest Avenue property [the Sedgwick Place property] still the property of Georgia A. Moore and it would also leave her the owner of the Virginia Avenue property, a strange anomaly in a real estate transaction." But counsel have overlooked a fundamental rule, concerning the power of a court of equity which has been recognized by our courts time and time again. This rule was well expressed by Judge BURGESS as follows: "When a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it has avoided a multiplicity of suits by doing full, adequate and complete justice be-

tween the parties. It will not content itself in this regard by any half way measures; it will not declare that a party has been ·defrauded of his rights and then dismiss him with a bland permission to assert, at new cost and further delay, those rights in another forum.'' [Boland v. Ross, 120 Mo. l. c. 216; McCullum v. Broughton, 132 Mo. l. c. 621; Hagan v. Bank, 182 Mo. l. c. 342; 1 Pomeroy's Eq. Juris. sec. 181.]

Having determined that this conveyance is a fraudulent one, a court of equity has an arm long enough and strong enough to handle the situation so as to accomplish complete justice between the parties. In taking such action, this court is not restricted as it would be in an action at law (Martin v. Estes, 132 Mo. l. c. 409), neither is it bound by the finding of the chancellor. [MacDonald v. Rumer, 320 Mo. 605.]

The decree of the chancellor dismissing plaintiff's bill is reversed, and the cause is remanded with directions to enter a decree that the defendant Lynn E. Bowman is holding title to the real estate known as the Sedgwick Place property described as Lot Seventeen, Block One, Sedgwick Place, an addition to Kansas City, Jackson County, Missouri, for the use and benefit of the defendant H. J. Sheldon; and to order and direct that said described real estate be subjected to the payment of the judgment in favor of the plaintiff, on the note for $1200 and costs. All concur.