GEORGE FRIEDEL and ANTON SNYDER, Appellants, v. PHOEBE E. BAILEY and STEPHEN W. BAILEY.—44 S. W. (2d) 9.

Division One, November 20, 1931.

24

*Chas. J. Macauley, C. C. Worthy* and *Grover C. Huston* for appellants.

*Joseph R. Palmer* for respondents.

HYDE, C.—Appellants, as creditors of respondent Stephen W. Bailey, brought this action, in equity, against him and his wife, Phoebe E. Bailey, to set aside deeds made by him to his wife (alleged to be without consideration) and to declare the property, conveyed by such deeds, to be subject to judgments obtained by appellants against Bailey. Respondents claim the deeds were made, in good faith, in consideration of the settlement of indebtedness due from Bailey to his wife, and that the land was their homestead.

Both parties rely upon the testimony of the Baileys themselves. Appellants offered in evidence the depositions of Bailey and his wife taken before the trial, and they testified, in their own behalf, at the trial. Their evidence on both occasions was substantially the same. It was to the effect that they were married, in Calhoun County, Illinois, in 1911. Both had been previously married. Each had three living children, by former marriage, who were grown and had their own homes. There were no children of this last marriage. Bailey, at the time of the trial, was 64 years old. When he was married, in 1911, he had no property. He, thereafter, prospered until he became involved in the affairs of his sons, which led to this suit. Mrs. Bailey had, in 1903, inherited from her first husband about $1500 in personal property and $1,000 life insurance. For seven years prior to the time she married Bailey, she ran a boarding house in the town of Hamburg, Calhoun County, Illinois. She owned the house and had some money loaned. In 1915, she sold her real estate and loaned Mr. Bailey $1500, for which he gave her his note bearing interest at six per cent. He used most of this money in the purchase of a farm, of 93 acres in Calhoun County, for which he paid $9,000. He then had about $2,000 of his own, and he borrowed $1,000 from his father, all of which he paid on the purchase price of the farm. The balance, of $5,000, was represented by a first mortgage on the farm. The house, on this farm, burned, without insurance, and Bailey borrowed $1200 from a local bank to rebuild it. He sold this farm for $12,000 in 1916.

Thereafter, in the same year, he purchased an 80-acre farm in Jersey County, Illinois, for about $5,000, $3300 of which he borrowed. He added buildings which increased his investment to about $8500. To do this building he borrowed $1400 more from his wife.

He gave her a new note for $3266.75, with six per cent interest, dated December 27, 1918, which was for the first note and interest and the additional money then borrowed. In 1920 Bailey's father died in Calhoun County, Illinois, and he was the administrator of the estate. He got about $6500 as his share of the estate and administrator's commission. He sold the Jersey County farm about this time for $10,000, taking a second mortgage for part of it. He also sold a house in Hamburg, for which he had paid $2500, for $3,000, and another house, he owned, for the same price he paid for it. At that time he paid up all of his debts except his note to his wife. These debts were mostly to local banks which had helped to finance his real estate purchases.

Two of Bailey's sons lived in Calhoun County, Illinois, and apparently were farming upon an extensive scale. In 1919 he signed a note to appellant Snyder, as security for the two boys, for $2,000. While in his prosperous condition, he let his boys have about $2,000 of his money, and bought a $1,000 automobile. On September 15, 1923, with appellant Friedel, he signed a $4,000 note, as surety for his two boys, to the Bank of Richwoods, of Calhoun County, Illinois. This note may have taken up a prior obligation of the boys, but that was not definitely shown. In 1920 or 1921 Bailey had a severe sickness, of pneumonia, which left him unable to do farm work. Having disposed of his property in Illinois, Bailey and his wife came to Lincoln County, Missouri, in July, 1921. It does not definitely appear how much money Mr. Bailey had at this time. However, he purchased a six-acre tract in Lincoln County which, including the improvements he made, cost about $6,000. He had, in addition to his remaining money, an $1100 second mortgage note on the Jersey County, Illinois, farm, which became uncollectible, and some smaller notes of from $200 to $500. Some of these he collected and others became worthless. He said that because of his poor health during the last eight years, he used much of the principal of his funds for living expenses.

In the latter part of 1925 he sold his six-acre tract for $5800, and purchased the 155 acres of land in controversy for $6500. Of this $2700 was represented by a first mortgage to the Prudential Life Insurance Company, which he later paid down to $2,000. After moving on the 155 acres in 1926, he built a new house, which cost about $2100, and made other improvements costing about $600 more. The house was contracted for and commenced in July and was not completed until October. Some of the smaller buildings were also built in the fall. The Baileys kept no livestock except a cow and a few hogs. Their farm land was rented for cash and grain rent.

On the 8th day of September, 1926, Bailey made one of the deeds, attacked by appellants, to Mrs. Bailey. It was recorded the next

day. It recited the consideration to be one dollar and love and affection. The Baileys both testified that this deed was given in settlement of the 1918 note which, with interest to September 8, 1926, amounted to $4903.20. They also say that it was agreed at the time, as a part of their settlement, that the improvements under way or contemplated were to be completed and that Bailey was to pay the balance due, for building them, with the money he still had in the bank. Mrs. Bailey marked the note paid and delivered it to him. She received the rents accruing after the date of the deed and paid the taxes and interest. The money he had left after paying the balance due on the buildings he had used for living expenses. Bailey testified he had left about $1,000, but it is not clear whether he meant after the buildings were paid for or at the time he made the deed.

The $4,000 note to the Bank of Richwoods had been renewed on September 15th of each year after 1923, up to September 15, 1926, when the last renewal was made. The Snyder note never was renewed, but the Bailey boys paid the interest on it annually until they became insolvent. Bailey said he supposed it had been paid until Snyder came to his place to see him about it the summer of 1927. In November, 1927, appellants brought suits, against Bailey, upon their respective notes, and each obtained judgment against him. Friedel had been forced to pay the $4,000 note when the bank would not renew it after it came due in September, 1927. Mrs. Bailey said that she knew nothing of Bailey's being surety upon either of these notes until summons was served upon him by the sheriff in November, 1927. She said that she insisted on a settlement of the note her husband owed her, in September, 1926, because he had been in an automobile accident, because they were both getting old, and because she wanted her children to have what was coming to them. Mrs. Bailey also said that she did not know he was in debt to anyone, but knew he had no other property except the notes he owned, most of which had by that time become of doubtful value. Respondents' evidence was that the farm, in 1926, was not worth more than the amount of the first mortgage and the amount due on her note. Appellants offered no evidence as to the value of the farm, but did show by Bailey what he paid for it and what he spent for improvements. In September, 1927, Mrs. Bailey's daughter and her husband visited her and she showed them the deed Bailey had made to her the year before. Upon the daughter's husband expressing doubt as to the validity of a deed made direct from a husband to a wife, they all went to the county seat and sought the advice of the circuit clerk. He told them such a deed was worthless and said that he could make deeds which would properly convey title. At his suggestion, Mr. and Mrs. Bailey executed a deed to her son-in-law, who with her daughter, executed a deed to her. These deeds were then

and there recorded and appellants also seek to set them aside. It was shown that an attorney for appellant Snyder had, about this time, written a letter to Mr. Bailey asking him to pay the $2,000 note.

The circuit court entered a decree finding that the deed of Stephen W. Bailey to Phoebe E. Bailey conveying the 155 acres was not made with the intent to hinder, delay or defraud creditors, but was made for "a valuable consideration" of $4903. The court, however, construed the deed as a mortgage to secure the payment of this amount. It further found that Mrs. Bailey should be charged with the sum of $492.80 for rents received; and that defendants were entitled to a homestead in the land subject to the $2,000 mortgage. The decree ordered that Phoebe E. Bailey have judgment for the sum of $4410.20, found to be secured by the deed; that the land be sold by the sheriff subject to the first mortgage; and that he pay out of the proceeds $1500 to Stephen W. Bailey for his homestead and $4410.20 to Phoebe E. Bailey. From this decree plaintiffs have appealed.

Although plaintiffs make a number of assignments of error, they say:

"The two principal questions . . . now submitted on this appeal . . . are: first, were the deeds in question . . . made with the intent to hinder, delay and defraud his ('Bailey's) creditors, and if they were, did his wife share with him in that intent? Second, are respondents . . . entitled to a homestead in the land in question?"

The matters raised, in appellants' assignments of error and points and authorities, amount to the contention that the evidence, of the Baileys themselves, show that the land was conveyed with such intent on the part of both of them. They ably argue this proposition, on the law and the facts, from many angles.

The allegation of appellants' petition was that the conveyance of the land by Bailey to his wife was without consideration. They point out that the stated consideration, expressed in the first deed, was one dollar and love and affection and in the others one dollar. A voluntary conveyance is fraudulent in law and void against existing creditors regardless of intent, if it includes so much of the debtor's property that it leaves him without the means to pay his debts to them. [May v. Gibler, 319 Mo. 672, 4 S. W. (2d) 769; Armour & Co. v. Harvey, 240 S. W. 807; Citizens Bank v. McElvain, 280 Mo. 505, 219 S. W. 75; Needles v. Ford, 167 Mo. 495, 67 S. W. 240; Snyder v. Free, 114 Mo. 360, 21 S. W. 87; Lionberger v. Baker, 88 Mo. 447.] It is also the law as appellants contend that transactions between husband and wife to the prejudice of the husband's creditors are looked upon with suspicion, "and their good faith must be so clearly shown that there can be no reasonable doubt of the

honesty of the transactions." [First National Bank v. Link, 275 S. W. 936; Zehnder v. Stark, 248 Mo. 39, 154 S. W. 92; First National Bank v. Renick, 246 Mo. 490, 151 S. W. 421; East St. Louis Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 142 S. W. 253; Gruner v. Scholz, 154 Mo. 415, 55 S. W. 441.] But if the wife is a bona-fide creditor of her husband, he has a legal right to, in good faith, prefer her over his other creditors. [First National Bank v. Link, 275 S. W. 936; Wellman v. Kaiser Inv. Co., 262 Mo. 285, 171 S. W. 370; Pew v. Price, 251 Mo. 614, 158 S. W. 338; Cole v. Cole, 231 Mo. 236, 132 S. W. 734; Alkire Grocer Co. v. Ballenger, 137 Mo. 369, 38 S. W. 911; Riley v. Vaughan, 116 Mo. 169, 22 S. W. 707; 27 C. J. 639, sec. 405; 12 R. C. L. 589, sec. 105.] The evidence was that Mrs. Bailey was not present when the first deed was drawn, but that her husband, pursuant to their agreement, executed the deed to her. The actual consideration was shown. Appellants were content to submit the question, of whether or not there was an actual consideration, on respondents' own testimony. The trial court, sitting as a chancellor, saw them on the witness stand before him and heard their story. He saw the bank book, check, notes and other papers which they produced to corroborate it. His finding was that there was an actual consideration of $4903, and we see, from the evidence, no reason for finding to the contrary.

Appellants, in view of this finding, now make a different claim from that in their petition (voluntary conveyance). It is summarized in their reply brief thus: "The case at bar is not one where the conveyance was made in good faith. It is a case where the husband conveyed to his wife all of his property with the intent to hinder, delay or defraud his creditors, and his wife shared with him that intent." Appellants say that, even though an honest debt was paid by the conveyance, it was the means of putting Bailey's property beyond the reach of his creditors; that it did hinder and delay them; that his wife aided him in doing it; and that therefore the transaction is fraudulent. The law is well settled that, while a debtor has the right to prefer one creditor to another by applying property to the payment of his debt to the exclusion of others, yet, if the creditor, knowing of the debtor's insolvency, takes more than is reasonably enough to pay his debt and pays to the debtor the surplus, in such form that the necessary result is to place the surplus beyond the reach of other creditors, or by any other plan aids the debtor in concealing his property from his creditors, then the transaction is fraudulent. [Lomax & Stanley Bank v. Peacher, 30 S. W. (2d) 44; Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907; State ex rel. First National Bank v. Trimble, 315 Mo. 966, 287 S. W. 432; First National Bank v. Fry, 216 Mo. 24, 115 S. W. 439; Columbia Savings Bank v. Winn, 132 Mo. 80, 33 S. W. 457; Sexton v. Anderson, 95 Mo. 373, 8 S. W. 564.]

In such a case, however, the creditor loses the benefit he might have had from the transaction because he participated in an attempt to defraud others. "When a creditor, by fraud, will attempt to defeat the claims of other creditors, there is no hardship in postponing his demand, although a just one, to those which he is endeavoring to defeat." [First National Bank v. Fry, 216 Mo. 1. c. 35.] In State ex rel. First National Bank v. Trimble, 315 Mo. 966, this court pointed out the distinction between merely attempting to secure a valid debt and trying, while doing so, to go further and aid the debtor to cover up his property. In that case, it was sought to quash the opinion of the Kansas City Court of Appeals upholding an instruction which required, to set aside a mortgage, the finding that property was conveyed for the purpose of defrauding, hindering or delaying creditors. An involved farmer had given a chattel mortgage on all his remaining property to secure the payment of rent of land. It was contended that the instruction made an intent to hinder or delay creditors a necessary element of a fraudulent conveyance, but that all that was necessary was that it had that effect. This court, in upholding the Court of Appeals, said:

"In the case before the Court of Appeals there were no facts, so far as the opinion discloses, from which the law would draw the conclusion that the chattel mortgage was fraudulent regardless of the actual intention of the parties. If it was given in good faith to secure a valid indebtedness, then it was not fraudulent, even though it incidentally operated to hinder or delay the mortgagors' creditors. [Hazel v. Bank, 95 Mo. 60.] If on the other hand it was given for the purpose of covering up the mortgagors' property or putting it beyond the reach of their creditors, it was fraudulent, although the debt described in it may have been a valid and subsisting obligation. [Klauber v. Schloss, 198 Mo. 502.] Generally speaking, a conveyance is not fraudulent as to creditors unless it was executed with the intent to hinder or delay them in the collection of their debts."

Corpus Juris states the rule as follows:

"If a transfer is for a valuable consideration, creditors cannot attack it because of the fraudulent intent of the grantor, where the grantee had neither (1) actual notice of such intent, nor (2) notice of any fact or facts calculated to put him on inquiry and which would lead to a discovery of such intent, nor (3) participated in fraud." [27 C. J. 506, sec. 175.]

The chancellor found in favor of respondents on the issues of fraud and intent to hinder and delay creditors. He believed their testimony and determined their good faith in all the transactions. Although trying an equity case *de novo*, this court, on matters involving credibility of testimony given orally before the chancellor, will usually follow the judgment of the chan-

cellor on disputed questions of fact. [Webb v. Cotton, 308 Mo. 272, 271 S. W. 768; Woodruff v. Cole, 307 Mo. 19, 269 S. W. 599; Scott v. Barton, 285 Mo. 427, 226 S. W. 958; Walsh v. Walsh, 285 Mo. 181, 226 S. W. 236; Bryant v. Stahl, 217 S. W. 31; Henderson v. Ressor, 265 Mo. 718, 178 S. W. 175.] The Baileys' evidence, uncontradicted as it is by any other witnesses, does not seem unreasonable nor unworthy of belief on the cold record. It would seem to portray the picture of a wife who, during her widowhood, was able to support herself and her children, unaided, and while doing so, hold together the property her first husband left her and even add to it; and who was a considerable factor in whatever measure of financial success her second husband attained. While permitting him to use her money to advance his own ventures, she was businesslike enough to demand and keep the written evidence of what he owed her. Appellants make much of the fact that when fortune smiled upon him and he had the proceeds of his inheritance and the profits of his farm transactions, she did not collect her notes. No doubt she then thought they were good and felt no reason to object to his use of his money to purchase a home for them and to support them. Bailey gives a reasonable account of what became of his money. There is no evidence, whatever, that Mrs. Bailey knew anything about his transactions in putting money into his boys' farming venture or signing their notes as surety. Plaintiff Snyder did not tell her about it, when he came to Lincoln County, after the first deed was made and would not even say that she heard any of his conversation with Bailey. She positively testified that she never knew that appellants held notes signed by Bailey until he was sued. The whole trouble, with appellants' contention, is that while they now denounce the Baileys' story as unworthy of belief they, themselves, presented substantially nothing else to the court but the Baileys' own story.

It was not unnatural for Mrs. Bailey, with the welfare of her own children to think of, with Bailey old and in poor health, and with his second mortgage note on the Illinois land and other smaller notes becoming worthless from the general decline in farm values, to demand a settlement. It is not so improbable that Bailey would conceal, from his wife, his poor judgment in becoming involved in his boys' financial affairs. In fact there is not even any evidence that he knew, in 1926, his boys were unable to take care of their own debts. Neither appellants nor anyone else took the witness stand to say that he was ever even asked to pay either note before 1927. Certainly Mrs. Bailey is not to be penalized for safeguarding, for her own children, the inheritance which came from their father, if there was no attempt, while doing so, to also use the transaction to hinder, delay or defraud other creditors. The chancellor found there was none and we will accept his judgment on this question.

Appellants make the further contention that, although it be conceded that the indebtedness was a valid one, still, if the deed from Bailey to his wife was in fact a mortgage to secure his indebtedness to her as the court construed it, then the transaction was fraudulent as to Bailey's creditors. They say, when the court found that the warranty deed was a mortgage, it should have, for that reason, set it aside because the effect of such a transaction is to make it appear that the grantor has no interest in property when in fact he does have a secret interest, i. e., the right to have the property reconveyed upon the payment of the debt secured. At the same time appellants are contending that the court had no authority to find that the deed was a mortgage because there was no such issue submitted by the pleadings; that it could not have been a mortgage because there was no debt to secure, since Mrs. Bailey cancelled her husband's note and delivered it to him when he made the deed; and that it was so erroneous, to make such a finding outside the issues, raised by the pleading and against the evidence, that the judgment must be reversed.

This court has set aside as fraudulent and void as to creditors absolute conveyances which were in fact given for security only (Rock Island National Bank v. Powers, 134 Mo. 432, 34 S. W. 869) or which in any manner concealed a secret trust. [Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907; 12 R. C. L. 543, sec. 68; 27 C. J. 606, sec. 355.] Our courts of appeals have held such conveyances to be void against creditors, even though the claim secured equals or exceeds in value the property so taken in trust. [Hunter v. Anthony, 209 Mo. App. 1, 236 S. W. 412; Gill v. Safe Co., 170 Mo. App. 478, 156 S. W. 811; Revercomb v. McCully, 74 Mo. App. 575; Pattison v. Letton, 56 Mo. App. 325; Molaska Mfg. Co. v. Steele & Walker, 36 Mo. App. 495.] According to Corpus Juris, "in the majority of jurisdictions, a conveyance of lands or sale of personalty accompanied by a secret understanding of this character, while a badge of fraud, is not fraudulent *per se*. The fact that the conveyance is absolute in form is merely a circumstance to be considered in connection with other facts to determine whether the transaction was fraudulent or not." [27 C. J. 608, sec. 356.] The above decisions of our Courts of Appeals seem to go far enough to hold that such a conveyance is fraudulent *per se*. No doubt, under the circumstances of these cases, the conveyances were properly held fraudulent. In all of them except Hunter v. Anthony, supra, the transaction was a bill of sale for a stock of merchandise, and in most of them the grantor remained in possession with the right to use part of the proceeds. Such conveyances violate our statutes. [Secs. 3097, 3116, 3117 and 3123, R. S. 1929.] In the Hunter case, a bank commissioner took, for security for an undetermined amount,

an absolute conveyance of all grantor's property. The grantee was liquidating an insolvent bank from which the grantor had unlawfully appropriated money. He knew of the grantor's dishonesty and financial condition. In the case here, the testimony is that Mrs. Bailey did not know that her husband owed anyone and there is nothing to show that he knew, when he made the deed, that he would have to pay his surety obligations. If there could be circumstances which would justify the holding that an absolute deed given for security was not fraudulent, it would seem that these facts would be sufficient.

We do not, however, think that the evidence justifies the finding that this absolute conveyance was, in fact, a mortgage. The only possible basis for such a finding is that Mrs. Bailey, when she went with her son-in-law and daughter to the circuit clerk in 1927 to get deeds made in accordance with the son-in-law's idea of what was necessary to give her good title to the land, said that Mr. Bailey "owed her some money and wanted to pay her, and the only way he could do it was to give her a deed to the place." She also said, on cross-examination, that the reason she had these deeds made in 1927 was "I wanted a good title if I have to take this place." It was further shown that, when Bailey was sued on the notes, she said to the sheriff, who served the summons, "that she had money in this place" and "that all they owned was that property." The Baileys both testified positively that the land was conveyed in settlement of the note and that Mrs. Bailey marked the note paid and delivered it to Bailey in 1926. Mrs. Bailey, at that time, got her husband's interest in the land (subject to his marital rights) by the deed of September 8, 1926. [Carson v. Lumber Co., 270 Mo. 238, 192 S. W. 1018; Givens v. Marbut, 259 Mo. 223, 168 S. W. 614; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 637; Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398.] It is apparent that what Mrs. Bailey was attempting to do in 1927 was to perfect the title she already had by the first deed, and that she was not trying to get anything more than the settlement, she had made, provided for her to get. The statements she made, taken by themselves, are just as consistent with the theory that she had already made a settlement, taking the land for the note, and was only trying to get what she had bargained for, as with the theory that she was then making it or had taken the first deed for security only. Considered in connection with all the rest of the evidence, they are hardly sufficient to show the contrary.

When property is conveyed in settlement of a debt, inadequacy of consideration is a badge of fraud. [27 C. J. 484, sec. 135; Aull v. Gaffin, 234 Mo. 171, 136 S. W. 343; Cole v. Cole, 231 Mo. 236; 132 S. W. 734; State to use v. Mason, 112 Mo. 374, 20 S. W. 629;

Ames v. Gilmore, 59 Mo. 537.] If the evidence here showed a substantial value in this property, above the mortgage on it and the amount of Bailey's note ($6903) to his wife, our conclusion would be different. Respondents' evidence, which was the only evidence of the value, tended to show there was none. The average value testified to by their witnesses, who lived near and were familiar with the land, was $6822.96. Some of them put it considerably below this figure. The price paid for land and the cost of improvements made thereon "are important considerations in estimating its value" and, especially in the absence of other testimony, is evidence of value. [23 C. J. 57, sec. 1800; Hyde v. Henman (Mo. App.), 256 S. W. 1088.] It is certainly not conclusive against countervailing evidence. It was further shown here that there was no sale for farm land at the time. The conclusion is justified from the testimony that land values were falling and that it would have been difficult to find a purchaser at the value testified to. Plaintiffs did not undertake to controvert this evidence as to the value or put on any witnesses on this issue. We, therefore, think the finding of the court that the transaction was in fact a mortgage, is, under the evidence, unwarranted.

Furthermore, there was no issue of equitable mortgage in the case. The decree grants no relief to appellants. It grants relief to which neither appellants nor Mrs. Bailey claim to be entitled and for which no one asked in any pleading in the case. When the court found for respondents and against the plaintiffs, on the issues of valid consideration, fraud, and intent to delay creditors, the transaction attacked was sustained and the only order warranted, by the pleadings and the evidence, was the dismissal of appellants' bill. The decree goes further and renders judgment in favor of Mrs. Bailey against her husband for a debt they both positively say is paid and for foreclosure of an equitable mortgage when they both (as well as appellants) say there is none. It provides that the proceeds of this foreclosure should be paid to Mrs. Bailey for her debt and to her husband for his homestead. It does not provide for anything to be paid appellants. Evidently the court considered, as the evidence tended to show, that the land could not be sold for enough, more than the first mortgage, to pay the amount found to be due Mrs. Bailey and $1500 in addition.

Appellants have no interest in this part of the decree. In fact, they say in their reply brief:

"Since both appellants and respondents agree that the judgment appealed from is an erroneous one and should be reversed. . . . the questions now are: Should the cause be remanded to the trial court with directions to grant plaintiffs a new trial, or with directions

to grant the prayer of plaintiffs' bill, or as respondents contend, should the cause be remanded to the circuit court with directions to dismiss plaintiffs' bill?''

Affirmative relief should not be granted for which a defendant has not asked and may not desire. [Laclede Land & Improvement Co. v. Creason, 264 Mo. 452, 175 S. W. 55.] ''The court is limited to the issues raised in the pleadings.'' [Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907.] ''The decree must conform not only to the evidence but also to the pleadings.'' [21 C. J. 671, sec. 854; 10 R. C. L. 555, sec. 338; Spindle v. Hyde, 247 Mo. 32, 152 S. W. 10; Black v. Early, 208 Mo. 281, 1. c. 313, 106 S. W. 1014; Schneider v. Patton, 175 Mo. 684, 75 S. W. 155; Reed v. Bott, 100 Mo. 62, 12 S. W. 327.] A decree outside the record issues is invalid and has been held void even when attacked collaterally. [21 C. J. 688, sec. 861; 10 R. C. L. 556, sec. 338; Reynolds v. Stockton, 140 U. S. 254, 11 S. C. 773, 35 L. Ed. 464.]

In Spindle v. Hyde, supra, it was sought to set aside deeds on the ground that they were executed pursuant to a plan to defraud creditors. The answer denied the fraud and asked that title be quieted in the grantee. The court made no finding on the fraud (the only question raised by the pleadings), but held the deeds to be equitable mortgages, and (as in this case) rendered judgment for the amount found to be due, from the grantor, a co-defendant, and for foreclosure, if it was not paid by plaintiff. This court reversed the decree because it was not responsive to the issues framed by the pleadings, and, since there was no determination of the question the pleadings did raise (scheme to defraud), sent it back for a trial of that issue.

The court said:

''That evidence, without a proper issue framed, or outside the issues, will not support a judgment on appeal, that a judgment must respond to the vital issues tendered by the pleadings, that a prayer in a bill of equity for general relief will not permit relief not consistent with the pleadings and fairly within their scope, is a favored doctrine of this court to which it has consistently and persistently held—a doctrine grounded in sound philosophy and standing every test of reason.''

In the present case the decree did, as we have stated, determine the issues tendered by the pleadings (valid consideration and bona-fide transaction), so no further trial is necessary. The court, instead of making the order its findings required (dismissing appellants' bill), went outside the evidence and the pleadings to make further findings and grant relief not responsive to any issue in the case. Where the trial court's finding and decree, in an equity case, is not sustained by the law and the evidence, this court will proceed

to make its own finding and enter such judgment as equity and justice require. [Wilson v. Wilson, 256 Mo. 541, 165 S. W. 999; Gibbs v. Haughowout, 207 Mo. 384, 105 S. W. 1067; Patterson v. Patterson, 200 Mo. 335, 98 S. W. 613; Rice v. Shipley, 159 Mo. 399, 60 S. W. 740; Widdicombe v. Childers, 84 Mo. 382; Durkee v. Chambers, 57 Mo. 575; see, also, Sec. 1063, R. S. 1929; Turner v. Anderson, 236 Mo. 523, 139 S. W. 180; State ex rel. Scullin v. Robertson, 187 S. W. 35; .Block v. Fid. & Guar. Co., 316 Mo. 278, 290 S. W. 429.] Under the pleadings and the evidence, considering the transaction bona-fide, the only possible finding is that the deed of September 8, 1926, was given and accepted in settlement of the debt Bailey owed his wife and that Mrs. Bailey then became the owner of the farm. A consideration of the questions of homestead and accounting for rents afterwards received, therefore, becomes unnecessary. Appellants failed to prove the allegations of their bill and the decree should have, after finding a bona-fide transaction, dismissed the bill.

The decree of the circuit court is reversed and the cause remanded with directions to enter such a decree. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.