William B. BOSTIAN, as Trustee in Bankruptcy for Josephine C. Bono, Respondent,

v.

Josephine C. BONO, Louis N. Bono and Virginia M. Bono, Appellants.

No. 46914.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Joseph N. Miniace, Louis J. Pelofsky, Kansas City, for appellants.

Nelson E. Johnson, Kansas City, for respondent.

HYDE, Presiding Judge.

Action by a judgment creditor to set aside a deed to real estate in Kansas City as a fraudulent conveyance. After defendant Josephine C. Bono (hereinafter called Mrs. Bono) was adjudged a bankrupt, her trustee in bankruptcy was substituted as plaintiff, under the provisions of Sec. 110, Title 11, U.S.C.A. The Court entered a decree, declaring the deed void and vesting title in the trustee, from which defendants have appealed.

In 1946, Mrs. Bono, a widow, mortgaged her home to borrow $5,000 to buy a tavern business with Fred Naccarato. The business was not profitable and she became indebted with her partner to Howard Middleton for rental of refrigerating equipment, for which indebtedness Middleton filed suit June 13, 1947; and upon which Middleton obtained judgment against Naccarato and Mrs. Bono, on December 12, 1952, for $2,954.95. Mrs. Bono filed a petition in bankruptcy and was adjudged a bankrupt on April 23, 1954; but while the Middleton suit was pending, on January 17, 1951, Mrs Bono made a deed to her home to her son Louis Bono and his wife. The consideration stated in this deed was "one dollar and other valuable considerations," and there were no revenue stamps on the deed. Mrs. Bono and Louis testified about this transaction both in depositions (admissions from which were put in evidence) and at the trial. Their account was that Mrs. Bono was unable to continue the monthly payments on the mortgage (none had been missed up to that time), the tavern business having failed and monthly amounts paid her by the Veterans Administration having been reduced from $60 to $42. Mrs. Bono also owed Louis $750 borrowed at the time she went into the tavern business. Louis knew there was litigation with Middleton at the time the deed was made but did not know the exact nature of it. Mrs. Bono had employed a lawyer who had filed a pleading in the case in 1947; and the case was tried after the deed herein involved was made.

Both Mrs. Bono and Louis said no money was paid for the deed but that he agreed to furnish the money to make the monthly payments on the mortgage and that she was to live in the house without payment of rent but was to pay the taxes. There was no recital in the deed of assumption of the mortgage debt but it was paid off by the end of 1956 and Mrs. Bono had paid all taxes. Mrs. Bono said they did not go into the matter of the $750 she owed Louis or its cancellation. Louis said: "I figured * * * the monthly payments as a loan"; and also said: "I just would forget the $750.00 she owed me previously if she would

deed the house to me, and I would continue the monthly payments." Plaintiff's evidence was that the fair market value of the property was $14,500, in 1951, when the deed was made. The amount then due on the mortgage was $3,136.62. Defendants offered no evidence as to value. In 1954, Mrs. Bono had obtained judgment for $3,400 against the parties to whom the tavern had been sold in 1948, apparently for the balance due on a note given for the purchase price but had collected nothing on it.

Defendants' answer admitted the allegations of the petition concerning the judgment against her, the ownership of the real estate and the relationship of the parties and denied all other allegations but asked no affirmative relief of any kind. The Court made the following findings about the transaction in its decree: "that on the 17th day of January, 1951, the said Josephine C. Bono, with the intent to hinder, delay and defraud her creditors, attempted * * * to convey Lot 266 Kingston, an addition to Kansas City, Missouri, by a warranty deed, to Louis N. Bono and Virginia M. Bono, his wife, (her son and his wife), * * * that no consideration passed from Louis N. Bono or Virginia M. Bono to Josephine C. Bono for said deed, and that said conveyance made Josephine C. Bono insolvent and was voluntary and that said Louis N. Bono at the time thereof, knew of the pendency of said suit by Howard A. Middleton against Josephine C. Bono."

■ Defendants' contention on this appeal is that plaintiff's evidence failed to make a case of fraud. Defendants say the evidence failed to show Mrs. Bono was insolvent at the time of the transaction because of her claim against the purchasers of the tavern. However the testimony of Mrs. Bono and her son was to the effect that she had no other property at that time, was unable to make the payments on the mortgage, and was living on the Veterans Administration payments. Mrs. Bono said that the purchaser "was to pay me $150.00 a month. He just paid a few months. Then he closed down." She thereafter filed suit but it is not shown that she collected anything more prior to obtaining judgment and there is no evidence that her claim was then collectible or ever has been since. It also appears that nothing was collected on the judgment prior to the trial herein in December, 1957. We must therefore hold that the evidence shows the finding of the Court, that her conveyance to her son in 1951 made Mrs. Bono insolvent, was correct.

"A voluntary conveyance is fraudulent in law and void against existing creditors regardless of intent, if it includes so much of the debtor's property that it leaves him without the means to pay his debts to them." Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9, 11, and cases cited. Furthermore, "the law is well settled that, while a debtor has the right to prefer one creditor to another by applying property to the payment of his debt to the exclusion of others, yet, if the creditor, knowing of the debtor's insolvency, takes more than is reasonably enough to pay his debt and pays to the debtor the surplus, in such form that the necessary result is to place the surplus beyond the reach of other creditors, or by any other plan aids the debtor in concealing his property from his creditors, then the transaction is fraudulent." (Friedel v. Bailey, supra, 44 S.W.2d loc. cit. 12.) "There are a number of indicia or badges of fraud and, although usually none by itself establishes fraud, a strong inference of fraud arises from a concurrence of several badges of fraud; such as: A conveyance in anticipation of suit; a conveyance to near relatives; inadequacy of consideration; unusual clauses in instruments or unusual methods of transacting business; transfer of all or nearly all of a debtor's property; insolvency; retention of possession by the debtor; the failure to produce available explanatory or rebutting evidence when the circumstances attending the transfer are suspicious." Allison v. Mil-

dred, Mo.Sup., 307 S.W.2d 447, 454; see also Hendrix v. Goldman, Mo.Sup., 92 S.W.2d 733, Section 428.020 RSMo 1949, V.A.M.S.

▉ In this case, the proof shows inadequate consideration even if cancellation of the $750 debt to Louis and the payment of the balance due on the mortgage could be considered as the consideration; and even also including homestead value as to which no claim has been made herein. See Section 513.475 RSMo 1949, V.A.M.S.; see also Oldham v. Wright, 337 Mo. 170, 85 S.W.2d 483. However, defendants do not claim there was any agreement for cancellation of the $750 debt and there was no assumption of the mortgage in the deed. In fact, Louis said he figured the monthly payments as a loan and therefore the Court reasonably could have found he had assumed no binding obligation to continue to make them and that the conveyance was intended as security for any amounts he should furnish. As we pointed out in Friedel v. Bailey, supra, 44 S.W.2d loc. cit. 13: "This court has set aside as fraudulent and void as to creditors absolute conveyances which were in fact given for security only (Rock Island National Bank v. Powers, 134 Mo. 432, 34 S.W. 869, 35 S.W. 1132), or which in any manner concealed a secret trust. Munford v. Sheldon, 320 Mo. 1077, 9 S.W.2d 907; 12 R.C.L. 543, § 68; 27 C.J. 606, § 355. Our Courts of Appeal have held such conveyances to be void against creditors, even though the claim secured equals or exceeds in value the property so taken in trust." See also Ebert v. Myers, 320 Mo. 804, 9 S.W.2d 1066, 1069; 24 Am.Jur. 192–194, Secs. 34–35; 37 C.J.S. Fraudulent Conveyances, §§ 35, 84, 228, 229. The badges of fraud which are present in this case are lack of adequate consideration, if any, concealment of the true consideration, a transaction between close relatives, a transfer of substantially all of the debtor's property, insolvency resulting from the transfer, retention of possession by the debtor, a transfer while an action was pending seeking a judgment against the transferrer for a large debt, and a conveyance concealing a secret trust or agreement between the transferrer and transferee. These badges of fraud together with all the facts and circumstances in evidence are amply sufficient to support the essential findings of the trial court hereinabove stated as to the intent and effect of the conveyance. In fact, defendants' evidence fails to show a really substantial basis for contrary conclusions; and, therefore, we must hold the Court's findings were proper under the evidence and must be affirmed, especially since they were based on the oral testimony of witnesses appearing before the trial judge.

▉ However, it appears very likely that Mrs. Bono should have homestead right in the property conveyed. "A bankrupt's right to exemption is governed by (1) the law of his domicile (2) in force at the time of the filing of his petition (3) as construed by the state court." May v. Gibler, 319 Mo. 672, 4 S.W.2d 769, 772, and cases cited. Since a homestead cannot be set off in this case, the procedure provided by Section 513.525, RSMo 1949, V.A.M.S., would have to be followed. See Daniels v. Peck, 221 Mo.App. 877, 288 S.W. 84; see also Osborn v. Osborn, 241 Mo.App. 1175, 274 S.W.2d 32; 26 Am.Jur. 61, Sec. 96; 40 C.J.S. Homesteads § 60, p. 500; Brennecke v. Riemann, Mo.Sup., 102 S.W.2d 874, 109 A.L.R. 1214. The right of homestead and its effect must be determined either in the bankruptcy court or on execution (May v. Gibler, supra) and proper proceedings taken before a sale.

It is ordered that this condition be stated in the decree and, as modified, the judgment is affirmed.

All concur.