Catherine Uhrig, L. H. Cowdery and Anna Steiner, v. Hill-Behan Lumber Company, a Corporation, Boeckler Lumber Company, a Corporation, and Archwill Realty Company, a Corporation, Appellants.—110 S. W. (2d) 412.

Division One, December 3, 1937.

852

*Sylvan Agatstein* and *Frank E. Atwood* for appellants.

*D. Calhoun Jones* for respondents.

FERGUSON, C.—This is a suit in equity to set aside a sheriff's deed conveying real estate, in the city of St. Louis, sold under a mechanics' lien judgment. The court entered a decree ordering defendant Archwill Realty Company to execute a quitclaim deed conveying the property to plaintiffs and ordering plaintiffs to pay said defendant $1565.33. Defendants have appealed.

The three plaintiffs, herein, Catherine Uhrig, L. H. Cowdery and Anna Steiner, are sisters. The three defendants are corporations. As indicated by the corporate name, two of these corporations are engaged in the lumber or building materials business, the third appears to deal in real estate. Plaintiffs alleged, and their evidence tended to show, that ''defendant Hill-Behan Lumber Company owns

and controls the Boeckler Lumber Company, and that defendant Archwill Realty Company is merely a straw for the defendant Hill-Behan Lumber Company.'' The defendants, as appellants, have not disputed such alleged joint interest and we shall treat them, as did the trial court, as being joined in interest in the subject matter of this controversy. Defendants claim title to and ownership of a certain parcel of land in the city of St. Louis, whereon is located an ''eight family apartment building,'' known as 2715-2719 Burd Avenue, by virtue of a sheriff's deed under a sheriff's sale on execution upon a mechanics' or materialmens' lien judgment. Prior to this sheriff's sale plaintiffs, the owners and holders of notes secured by a deed of trust on this same property, had caused the deed of trust to be foreclosed and claim title and ownership of the property by virtue of the trustee's deed to them on such foreclosure.

The evidence discloses the following facts. In December, 1927, the Franciscus Realty Company, a corporation, engaged in the general real estate business, and in the buying and selling of real estate securities, in the city of St. Louis, sold plaintiffs a note in the principal sum of $17,500 dated July 27, 1927, due three years after date, secured by a deed of trust on the real estate involved in this controversy. The note and deed of trust were delivered to plaintiffs at the time of purchase together with a certificate of title, dated December 8, 1927, which showed upon its face that the deed of trust was a first lien upon the real estate. The principal note and the interest notes were made payable at the office of the Franciscus Company. Plaintiffs at no time met or had any dealing with the owners of the property, or the makers of the note and deed of trust, or the payee in the note and the *cestui que trust* in the deed of trust. The Franciscus Company as plaintiffs' agent collected the interest notes as they matured. In fact, as will presently more fully appear, the Franciscus Company apparently acted for plaintiffs and as their agent in all matters pertaining to this loan and plaintiffs relied upon it to act for them in such capacity. The president of the company, James M. Franciscus, was named trustee in the deed of trust, a circumstance to be borne in mind. The defendant Boeckler Lumber Company had a mechanics' or materialmens' lien against this same real estate arising out of materials entering into the construction of the apartment building. These materials had been furnished prior to the recordation of the deed of trust and the mechanics' lien had priority over the lien of the deed of trust. The priority of the mechanics' lien is conceded. In April, 1928, some four months after plaintiffs had purchased the note and deed of trust and received the certificate of title of date of December 8, 1927, the Boeckler Lumber Company filed suit to enforce its mechanics' lien. In this suit the grantors in the deed of trust, James M. Franciscus, trustee, the *cestui*

*que trust* therein, the unknown holders and owners of the notes secured thereby, and the record owners of the fee simple title, of the property, were made defendants. Personal service of summons was had on both the trustee, James M. Franciscus, and the *cestui que trust*, in the deed of trust.

The American Surety Company "had written a mechanics' lien bond dated August 19, 1927, for $17,500 (the amount of the note secured by this deed of trust) the purpose" or condition "of which was to save the Franciscus Company harmless from any loss by reason of liens against the property." described in this deed of trust. Upon service of the summons, with copy of the petition, upon James M. Franciscus, the trustee, and president of the Franciscus Company, the assistant treasurer, of the company mailed the summons and copy of the petition to the American Surety Company with a letter calling the attention of that company "to the fact that it was a mechanics' lien case" and that it had written a bond covering such liens against this property. Sometime later the American Surety Company acknowledged the letter and receipt of summons and copy of the petition and advised the Franciscus Company; "this matter is receiving our attention." However so far as the record discloses the surety company did nothing whatsoever about the matter nor did the Franciscus Company do anything further about it. The attorney in charge of the lien suit and defendants' officers said no one ever at any time took up the matter of this lien with them. The treasurer of the Franciscus Company, a Mr. Louis Maginn testified that he personally "advised with plaintiffs in all things with reference to this deed of trust" and that, as early as 1928, "there was no question about our company having knowledge" of this lien suit.

When the note secured by the deed of trust matured in 1930, $3500 was paid on the principal at the office of the Franciscus Company and a renewal for three years made as to the balance of the principal. This collection and renewal was handled wholly by the Franciscus Company under the personal supervision of its treasurer, Maginn. Though it had full knowledge of the filing of the lien suit the company effected this renewal without any investigation whatsoever as to whether the mechanics' lien had been discharged and without having the title "run to date" or obtaining a certificate of title which would have shown the pendency of the lien suit and it may well be added here that the Franciscus Company never at any time advised plaintiffs of this lien. From April, 1928, to April, 1929, the attorneys for the Boeckler Lumber Company, in the lien suit, caused summons, *alias* summons and *pluries* summons to issue to the sheriff of the city of St. Louis and the sheriff of St. Louis County in an effort to get service upon defendants Fred W. and Eva L. Mieger (owners of the property who executed the deed of trust),

856

and upon Edna Agnes Lee and L. C. Hosack (who were necessary parties defendants). Service was apparently finally obtained as to Hosack and the Meigers as the three of them filed separate answers on September 20, 1929. During 1930, 1931 and the first part of 1932, numerous *pluries* summons were issued in a futile attempt to get personal service on defendant Edna Agnes Lee. It was then decided that publication would be necessary as to defendant Lee and to include therein any unknown owners and holders of the notes secured by the deed of trust, though as heretofore noted personal service had been had on all of the parties to the deed of trust, the makers, the trustee and the *cestui que trust* therein. However prior to obtaining an order of publication a letter of date of August 2, 1932, was written to the Franciscus Company again calling its attention to the pendency of the lien suit. Mr. Maginn, the treasurer of the Franciscus Company, thereupon forwarded this letter to the American Surety Company and again called its attention by number and amount to its bond covering this property and securing the Franciscus Company against mechanics' liens thereon and stated, that this is the ''mechanics' lien about which you were notified several years ago.'' So far as appears, upon this record, the surety company did not acknowledge this letter of the Franciscus Company and did, about the matter, as it had done upon the first notification, that is, ''nothing;'' nor did the Franciscus Company either notify plaintiffs or itself pursue the matter further.

In December, 1932, the attorneys for the lumber company, in the lien suit, obtained an order of publication as to defendant Lee and also any unknown owners and holders of the notes secured by the deed of trust. There is no evidence tending to show that either defendants or their attorneys had any knowledge, actual or constructive, that the notes had been transferred by the payee thereof. In view of the provisions of Section 3181, Revised Statutes 1929, this publication so far as it concerns the unknown holders, if any, of the notes secured by the deed of trust was superfluous inasmuch as service was had on all the parties having any interest in the notes and deed of trust disclosed ''by the proper public records.'' Proof of publication was made February 28, 1933, completing service as to all the necessary parties defendant. On October 11, 1933, the lien suit was assigned for trial to Division Two of the court. In that same year, 1933, the note secured by the deed of trust, renewed by the Franciscus Company, acting for plaintiffs, in 1930, after payment on first maturity of $3500 on the original principal, matured but default being made in payment of principal and interest the Franciscus Company advised foreclosure and proceeded therewith. The foreclosure seems to have been under the supervision of Maginn who appeared at the foreclosure sale on October 2, 1933, and made the sole bid of $4000 on behalf of plaintiffs. The trustee's

deed was made to plaintiffs and filed for record October 26, 1933. Plaintiffs say, they "left everything" pertaining to this note and deed of trust to "Mr. Maginn and the Franciscus Realty Company." We repeat here Maginn's statement, that, in his capacity as an officer of the Franciscus Company, he "advised plaintiffs in all things with reference to this deed of trust." But with full knowledge on the part of both the company and Maginn of the filing of the lien suit and that the mechanics' lien was superior to the lien of plaintiffs' deed of trust no effort whatsoever was made at any time to ascertain the status or disposition of that suit and without so doing or notifying plaintiffs of the lien suit, or making any investigation of the title or obtaining a certificate of title to that date, the Franciscus Company took charge of and supervised the foreclosure sale for plaintiffs and caused the trustee's deed to be made to them whereby they in entire ignorance of the lien suit supposed they were taking title to the property free of any liens against it.

Immediately following the foreclosure sale and the delivery to them of the trustee's deed the plaintiffs took over the control and management of the property. They testified that they found it in a "very poor, run-down condition;" that they found six of the eight flats occupied by tenants; that only four of these were paying rent and the two others were evicted; that they made repairs and it took about three months to have the eight apartments "cleaned up, painted and put in first class liveable condition;" that all the apartments were rented to paying tenants by the end of the three months period; and that each "flat" or "apartment" had three rooms "with 4 room efficiency" and rented for $20 a month, a total of $160 a month. As noted plaintiffs' trustee's deed was of date of October 20, 1933. On the following December 1, 1933, the lien suit came to trial. The minutes of the proceedings in the circuit court of that date put in evidence show the following: "Fred W. Meiger, Eva L. Meiger, James M. Franciscus, Charles H. Hart, and Edna Agnes Lee and all unknown owners, etc., fail to appear and default granted as to said defendants. Defendant L. C. Hosack having filed an answer fails to appear. Trial by the court, finding and judgment in favor of plaintiff (Boeckler Lumber Company) and against defendant L. C. Hosack (who we assume originally purchased the materials used in the improvements) in the sum of $667.16, together with interest from October 1, 1927, amounting to $246.85, total $914.01, interest and costs, with mechanics' lien against building, appurtenances and real estate (described) prior and superior to the deed of trust and deed in plaintiffs' petition described." The attorneys who represented the Boeckler Lumber Company in the lien suit were in charge thereof throughout. One of these attorneys who had direct charge of the suit testified that "mechanics' lien suits are their specialty" and that they handled a large number of such suits; that generally the

only name submitted to them by the client is that of the "contractor" or "the party" to whom the client has supplied the materials or labor; that thereupon they check the public records for the names of all parties in interest disclosed thereby; that the "parties of record at the time the suit is filed is as far as we go;" that if they find publication will be necessary it was their custom to first have "any deed of trust parties" contacted (as was done in this instance) but if no response is made they "after awhile" proceed with the publication; that "in this case we had an awful time getting service on the original owners of the property but finally did get service on them and then it just went along in the regular way;" and that they "make no effort to collect the debt" except through the statutory mechanics' lien proceeding and that they never had any personal contact with the parties to this suit.

It further appears from the testimony of this attorney that he and those with whom he is associated retain entire charge of the suit directing all proceedings to and through, if necessary, an execution sale of the property, at their order, by the sheriff at which sale they appear and act for the client. The judgment in the lien suit having been entered, as aforesaid, on December 1, 1933, the attorney for plaintiff therein, sometime in the first part of 1934, caused a general execution to issue against the judgment debtor, L. C. Hosack, upon which in due course the sheriff made a *nulla bona* return. Then on July 9, 1934, the sheriff levied on this real estate under and by virtue of a special execution. Notice of sale thereunder was duly published in the St. Louis Daily Record. The date of sale was fixed as August 6, 1934. On that date the sheriff sold the property. The attorney for plaintiff in the lien suit was the only person present at the sale. He bid in the property for his client for $1260 and at his direction the sheriff's deed, executed and acknowledged under date of August 24, 1934, was made to the defendant Archwill Realty Company, as grantee. It does not appear just when or at what later time the case was finally closed by payment of costs and delivery of the deed to defendants herein. To this point, we can well say that approximately until the 1st of September, 1934, the attorneys for plaintiff therein had the entire charge of the mechanics' lien proceeding nor do we discover any evidence tending to show that either they or defendants, or either of them, had any actual knowledge that the plaintiffs herein were the owners and holders of the notes and deed of trust securing same and that the deed of trust had been foreclosed nor, as heretofore stated, did plaintiffs herein have any actual, personal knowledge of the lien suit, the judgment therein and sale thereunder though as noted their agent the Franciscus Company and its officers who looked after the notes and deed of trust for these plaintiffs had actual knowledge of

the lien suit from its inception and later actual knowledge that the lien claim remained pending and undisposed of.

Two of the plaintiffs testified that the first actual knowledge of any kind whatsoever that came to plaintiffs, or either of them, of the mechanics' lien proceeding, judgment and sheriff's sale, thereunder was in March, 1935. The two plaintiffs who testified, L. (Lillie) H. Cowdrey and Catherine Uhrig, lived together at 4902 Wabada, in St. Louis City. They stated, that in March, 1935, a Mr. Popp called at their home making inquiries about the property. Plaintiff Cowdrey testified that Popp ''came to the door and asked if we were the owners of the property at 2715-19 Burd Avenue, and we said, 'yes.' He said, 'well you don't own it, we own it.' I said, 'come in, there must be some mistake.' He came in. He said, 'here are the papers that show we are the owners of it.' I said, 'well, who is the owner.' He said, ''Hill-Behan Lumber Company' . . . so that's the first I knew of it. We asked him who sent him or how did he find us out, and we told him that we lived here, right here (4902 Wabada), all our lives, and he could find us, and he said, 'yes, we have been watching this property for sometime and see it is in good condition.' He said he was from the Hill-Behan Lumber Company.'' Plaintiffs say the alleged statement, by Popp, ''we have been watching this property for sometime and see it is in good condition,'' referred to the Burd Avenue property, in controversy. Plaintiff, Catherine Uhrig, testified, that on this occasion Popp stated to her and to her sister, ''you are no longer the owners; we own the property;'' that she inquired, ''how did you obtain it;'' that Popp explained the mechanics' lien proceeding and that in the course of the conversation Popp said, ''he had been watching this property for quite awhile.'' Popp denied making the statement relative to watching the property ''for sometime'' or ''for quite awhile,'' etc. He stated that he never saw the property until after the sheriff's deed was made to the Archwill Realty Company by whom he was employed; that he went there two or three times in an effort to collect rents and that one of the tenants gave him the name and address of plaintiffs as the owners of the property and thereupon he called upon them and advised them of his company's claim of ownership.

Plaintiffs did immediately communicate with the Franciscus Realty Company about the matter and then, for the first time since it sold plaintiffs the note and deed of trust in 1927, the Franciscus Company had the title examined. Of course, this investigation disclosed the mechanics' lien proceedings and sale thereunder. Negotiations were entered into with defendants, and an officer of the Archwill Realty Company stated that the amount involved in the mechanics' lien case, including costs, was $1565.33. Plaintiffs made a tender of this amount for a deed but it was refused. Evidence as to the value of the property ranged from $10,000 to $14,000. Plaintiffs,

however, say that the sale price "is admittedly not so inadequate as to justify the setting aside of the sale" on that ground alone. Plaintiffs' petition alleged conspiracy to defraud plaintiffs, based on knowledge that they owned the mortgage note; and alleged collusion to prevent them from knowing of the proceedings. The court's decree did not find fraud, and plaintiffs point to no evidence sufficient to show that there was any fraud, concealment, or conspiracy to defraud prior to the mechanics' lien sale.

Plaintiffs' contention is thus stated in their brief: "Inadequacy of price coupled with fraud or unfairness such as to shock the conscience of the court will justify the court in setting aside a deed obtained by parties using such means." Plaintiffs' argument is that considering the low price "coupled with the general manner in which the appellants conducted themselves, it is inevitable that the conscience of the court should be shocked and . . . it appears that the respondents had offered to do equity and that . . . appellants can in no way be injured by a decree which provides that they shall have everything which is coming to them, including attorneys' fees." The "general manner in which appellants conducted themselves," constituting "unfairness or fraud;" upon which plaintiffs rely evidently is based on the matters stated in the specific findings of the court's decree to-wit: "that thereafter (after judgment) the defendants made no demand upon the plaintiffs for the payment of said judgment, but sat by and permitted the plaintiffs to improve said property to the extent of more than two thousand dollars ($2,000); . . . that the plaintiffs were at all times (after they learned of the sale) ready, willing and able to pay the defendants such sums as might be necessary to satisfy the defendants' claim . . . that the defendants, through their agent, informed the plaintiffs that the sum of one thousand five hundred sixty-five dollars and thirty-three cents ($1565.33) would make the defendants whole in connection with all moneys due, both as to their judgment and interest thereon, and as to expenses in connection with the collection of the same, and that the plaintiffs thereupon offered to the defendants such sum of money, which sum was refused by the defendants . . . and that the defendants in acquiring the same for $1260.00 (their bid) . . . and in refusing to accept the tender made by the plaintiffs . . . have acted in such a manner as, coupled with the great inadequacy of price for which the defendants bought in the property, to shock the conscience of the court."

The court did not declare the sale void or set aside the deed and there is no evidence in the record upon which it could have done so. All proceedings in the mechanics' lien case and the sale thereunder were regular and there is no evidence whatever that defendants, or any of them, knew prior to the sale that plaintiffs were the owners of the note, or did or could have done anything to prevent plaintiffs

from learning about the sale. There was no evidence of unfairness or suppression of bidding at the sale. Neither is there any evidence that plaintiffs made any improvements on the property after the sheriff's sale, but the reasonable inference is that they made them immediately after their foreclosure. Certainly defendants could assume that whoever was making improvements then would protect them at or before the sale. If plaintiffs did make any improvements after the sheriff's sale, they also collected rentals and there is no showing as to which was greater. However, if defendants got good title by the sheriff's sale, they were under no obligation to sell the property back to plaintiffs. The court did not find that the sheriff's sale was invalid or set aside the deed thereunder, but recognized the validity of defendants' title by ordering it conveyed by deed. Failure to demand from plaintiffs, after the sale, the amount it cost them, or to accept plaintiffs tender of any amount is, therefore, wholly immaterial. Neither could be the basis for setting aside a valid conveyance under the sheriff's sale, which the court recognized by not doing so; nor for compelling defendants to give up a valid title. In other words, if the sale was valid, defendants own the property and cannot lose their right to keep it by merely refusing to sell it back to plaintiffs. The record seems to indicate that someone, other than defendants, may have owed plaintiffs some duty in this matter and plaintiffs may not be wholly without remedy.

■ Nevertheless, since the mechanics' lien law is wholly statutory and gives no right of redemption, such right must come from the Legislature and cannot be created by the court. [Fleming-Gilchrist Const. Co. v. McGonigle, 338 Mo. 56, 89 S. W. (2d) 15.] Therefore, while the sale stands, plaintiffs are not entitled either to recover the property from defendants or to be by them compensated for its loss. [Peterson v. Kansas City Life Insurance Company, 339 Mo. 700, 98 S. W. (2d) 770.] The only case cited by plaintiffs is Van Graafieland v. Wright, 286 Mo. 414, 228 S. W. 465. There the court, finding fraud and collusion to deceive the owner, set aside the sheriff's sale and annulled the deeds. It is not authority for letting this sale stand as a valid mechanics' lien sale and requiring a conveyance to the former owners because of something which took place after the lienor got title. The only relief warranted by the pleadings herein was to declare the sheriff's sale invalid for fraud, set aside the defendants' deed, and permit a new sale if the lien was not paid. The court could not grant that relief because the evidence was insufficient to sustain the charge of fraud made in the petition. Certainly the court could not then proceed to grant relief not warranted under the issues made by the pleadings. [Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9.] We must therefore, hold that the sheriff's sale and deed to defendants must be sustained as valid. Where the trial court's finding and decree, in an equity case, is not sustained

862

by the law and the evidence, this court will proceed to make its own finding and enter such judgment as equity and justice require. [Wilson v. Wilson, 256 Mo. 541, 165 S. W. 999; Gibbs v. Haughowout, 207 Mo. 384, 105 S. W. 1067; Patterson v. Patterson, 200 Mo. 335, 98 S. W. 613; Rice v. Shipley, 159 Mo. 399, 60 S. W. 740; Widdicombe v. Childers, 84 Mo. 383; Durkee v. Chambers, 57 Mo. 575. See, also, Sec. 1063, R. S. 1929; Turner v. Anderson, 236 Mo. 523, 139 S. W. 180; State ex rel. Scullin v. Robertson (Mo.), 187 S. W. 34, 35; Block v. U. S. F. & G. Co., 316 Mo. 278, 290 S. W. 429.] Under the pleadings and the evidence, considering the sheriff's sale and the proceedings upon which it was based to be valid, the only possible finding is that the defendants became the owners of the property. Since plaintiffs failed to prove the only allegations of their bill which could entitle them to the relief sought, the decree should have dismissed the bill.

The judgment and decree of the circuit court is reversed and the cause is remanded with directions to that court to enter a judgment dismissing plaintiffs' bill. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur except *Douglas, J.,* not sitting because presiding at time of trial of case below.