244 S.W.2d 397 (1951)
MAAS et al.
v.
DRECKSHAGE et al.
No. 28114.
St. Louis Court of Appeals, Missouri.
December 18, 1951.
*399 Bakewell, Bakewell & Cramer, and Claude I. Bakewell, all of St. Louis, for appellants.
William Waye, Jr., Theodore Bruere, Jr., and B. H. Dyer, all of St. Charles, for respondents.
HOUSER, Commissioner.
This is an action brought under § 429.270, RSMo 1949, for the purpose of adjusting the claims, charges, credits and liens arising out of the construction of a dwelling house under an oral contract and to determine the relative rights of the parties.
Plaintiffs Richard and Marie Maas, husband and wife, owners of the house, claim that they have discharged all their obligations under the contract. They allege in their petition that defendant Dreckshage, the general contractor, agreed to build the house at a maximum cost of $10,000; that during the course of construction they paid him $7,000; that thereafter Dreckshage claimed a balance due to him from plaintiffs of $6,446.96 and told them there were unpaid bills of subcontractors and materialmen against the premises; that defendants Hackmann Lumber Company and Rauch Lumber and Grocer Company gave notice of intention to avail themselves of the mechanic's lien statute for materials furnished in the sums of $4,784.38 and $232.21, respectively; that other contractors may have lien claims against the property; and prayed that if the court should adjudge liens against the property in excess of $3,000, plaintiffs have judgment against defendant Dreckshage for such excess.
Defendant Dreckshage denied the terms of the oral agreement plead by plaintiffs, claimed that the agreement was to furnish the materials and labor necessary to build a five-room frame house with bath, and that he did so at the special instance and request of the plaintiffs; that the total amount of the cost thereof was $12,583.61; that plaintiffs were entitled to cash credit of $6,096.50 and other credits for materials in the sum of $20.08, leaving a total amount due him in the sum of $6,467.03 for which he prayed judgment and for a mechanic's lien against the building.
Defendants Hackmann Lumber Company and Rauch Lumber and Grocer Company answered and counterclaimed, Hackmann praying for judgment against defendant Dreckshage for $4,784.38 for lumber and materials sold and delivered to him for use in the construction of the building, and fully itemized therein, and for judgment against plaintiffs Richard and Marie Maas for $660.34 for materials personally receipted for by plaintiffs, Rauch Lumber and Grocer Company praying for judgment against defendant Dreckshage in the sum of $232.21 for materials sold, delivered and used in the construction of the house. Both defendants prayed that their judgments be fixed as liens against the property.
Plaintiffs by leave of court deposited $2,900 in the registry of the court, admitting that balance due under their contract with Dreckshage, claiming a credit of $100 due for failure of the contractor to install front and back steps and for needed repairs on the roof which they claimed was defectively constructed.
The decree of the trial chancellor found (1) that plaintiffs "made and entered into an oral agreement with defendant Clinton Dreckshage, as an original contractor, for furnishing the materials and labor for the building and erection of a five room frame house with bath * * * that at the special instance and request of the plaintiffs and under an oral agreement with them, defendant Clinton Dreckshage furnished to and for said buildings the materials and performed all of the work necessary to build and erect said house"; (2) that after certain credits plaintiffs are indebted to Clinton Dreckshage in the sum of $6,312.23, for which judgment was entered in favor of Clinton Dreckshage and against plaintiffs and declared a lien against plaintiffs' real estate; (3) that Clinton Dreckshage is indebted to Hackmann Lumber Company and Rauch Lumber and Grocer Company for materials furnished in *400 the sums of $4,784.38 and $232.21, respectively, for which judgments were rendered against Clinton Dreckshage and which sums or so much thereof as should remain unsatisfied after levy of execution on the property and effects of Clinton Dreckshage, were declared to be liens against plaintiffs' real estate.
Our duty in an equity appeal is to review the proceedings in the trial court de novo, Strohm v. Boden, 359 Mo. 573, 222 S.W.2d 772; Handlan v. Handlan, 360 Mo. 1150, 232 S.W.2d 944, on the whole record, make our own findings of fact, draw our own conclusions of law, and render or direct the rendition of such judgment as equity and justice may require, Uhrig v. Hill-Behan Lumber Co., 341 Mo. 851, 110 S.W.2d 412, giving due deference to the findings and conclusions of the trial chancellor. Held v. Reis, Mo.Sup., 193 S.W.2d 17, loc. cit. 20.
The principal question on this appeal is whether defendant Clinton Dreckshage agreed to build a house for plaintiffs for a maximum sum of $10,000, or whether the agreement was to build a house for the cost of the materials and labor furnished. It is admitted by all parties that the house was built under an oral contract.
Plaintiffs, contending that the agreement limited the cost to $10,000, offered their own testimony as well as that of Eleanore Dudley, the mother of Mrs. Maas, on this issue. The plaintiffs and Mrs. Dudley testified that there were several conferences between plaintiffs and defendant Dreckshage in the spring of 1948 looking to the building of a home on a lot owned by plaintiffs; that at the first conference attended by the above named and Mr. Wetter of the Hackmann Lumber Company plaintiffs informed Dreckshage that they had $10,000 to spend for a home; that they could not spend over $10,000 and that if they could not build a five-room home for that amount they would not build. At that time plaintiffs had no definite plans and Dreckshage said they "would have to get the type of house which we (they) wanted" but that he "saw no reason why a five-room house couldn't be built for 9500 to $10,000"; that it could be built for less than $10,000 if plaintiff Richard Maas would help in the construction.
Later plaintiffs found a picture of a house which suited them and Dreckshage was asked whether that house could be built for $10,000. After looking at the picture he said the only way he could tell definitely was to get the blueprints. Richard Maas testified that at the second conference in answer to his question "Do you think it can be built for $10,000?" Dreckshage said "Sure, that house can be built for $10,000, probably less." The blueprints were ordered and after looking them over Dreckshage, according to plaintiffs, stated that he saw no reason why he could not build that house for $10,000; that he was "positive * * *" "almost positive" it could be built for $10,000 or less. Mr. and Mrs. Maas asked Dreckshage to build the house from the blueprints and they came to an agreement. Mrs. Dudley testified that at that time Dreckshage said "he was sure he could build this home for that much money, maybe a little more," and that she then said "Don't say `that much money or more', because we don't have much to spend." Richard Maas testified that Dreckshage said he would build the house for $10,000; that "we wouldn't want it to run over, we can't afford it, and he said, `I will not. I am a man of my word and I keep my word and I will build it for $10,000'"; that he would build that house for $10,000 "and not a dime more * * *"; that it "can't possibly run over" $10,000; that the house "could be easily built for $10,000." Richard Maas stated that he would pay $10,000 for the construction of the home. They did not discuss the payment of bills as the job went along; the only one Maas paid was Dreckshage; plaintiffs were to pay Dreckshage and Dreckshage said he would pay the material bills as they became dueevery bill, "every subcontractor's bill he got." Maas further testified that at that final conference Dreckshage said "You don't have to worryI know it can be put up for less than ten thousandI am not that kind of a guy; when I say ten thousand I mean ten thousand." *401 Plaintiffs conceded that there were no specificationsonly a picture, floor plans and blueprints. They said it was agreed that the house was to consist of five rooms and bath, without a garage, to be built out of "good" lumber and "good materials" using "just ordinary plumbing fixtures""just like any other home would have in, I suppose." It was "supposed to be plastered" and the exterior was to be frame but there was no discussion about the sheeting underneath the siding. The front door was agreed upon, the walls were to be 10 inches thick, there was to be a fireplace and the number of coats of paint was to be "whatever goes with a house like that." The floors were to be hardwood, but whether maple, red oak or white oak was not discussed. There was no agreement as to the grade of lumber, nor as to the electric wiring, kitchen linoleum, plumbing fixtures, what type of bath tub, wash bowl or toilet, what kind of hopper, or what size studdings or posts were to be used. Plaintiffs left to the contractor the dimensions of the living room, library, vestibule and bathroom. There was no discussion as to the rafters or joists, the height of the ceilings, the interior doors, screens, whether white or yellow pine lumber or trim was to be used or whether the house would have subflooring. Nothing was said about linoleum. There was no discussion prior to the time excavation began concerning hauling in dirt to level up the lot.
Mr. Maas testified the plans called for an oil furnace, but said there was no agreement as to the size of the furnace. Mrs. Maas testified that although they wanted a furnace they "didn't say what kind of furnace we wanted in the house." Mr. Maas testified the roof was to be composition tar shingles, Mrs. Dudley testified it was to be a "good heavy roof"; Mrs Maas testified it was to be a heavy asbestos shingle roof.
Defendant Dreckshage, contending that it was a "time and materials job", testified that at their first meeting nothing was said about the amount of money plaintiffs were going to spend for a house; that at the second meeting plaintiffs had a book and plan with them, without any specifications, and that Dreckshage told plaintiffs that a house like that would cost "approximately $2,000 a room"; that it would run around $10,000 at prevailing prices; that "the house, at that time, would run right at $2,000 a room"; that the figure $10,000 was mentioned and no other figure was mentioned or discussed except $2,000 (per room). He specifically denied that he agreed to construct a residence according to plaintiffs' plan for a maximum cost of $10,000; denied that he told plaintiffs "what this house was going to cost"; denied that he told plaintiffs that the house they wanted to build could be built for $2,000 a room; denied that he told plaintiffs he would build "that house" for $10,000, and stated that he did not at any time make an agreement with plaintiffs to build a house for $2,000 a room. He testified that the house was to be built and that he took the job on the basis of "time and material" and that that was the understanding with plaintiffs. He stated that when he discussed the possibility of building a house for $2,000 per room he had nothing upon which to base an estimateno planexcept Exhibit A which was a floor plan and which did not tell how big the hall was or how large the footings or the foundation were to be; that an ordinary size foundation on that type of a house would be 8 inches whereas he put in a 10 inch foundation for plaintiffs; that ordinary size footings would be 8×16 whereas the footings he put in for plaintiffs were 8×18; that the plans did not show what kind of bathroom fixtures, flooring, furnace or ceiling were to be installed; that he could not estimate the cost of the house without specifications; that the building of a house for $2,000 a room would not contemplate all of the things which were built into plaintiffs' house; that there was no agreement about the type of flooring until the house was plastered, at which time plaintiffs indicated they wanted oak floors; that there is quite a difference between the cost of a hot air coal furnace and an oil furnace and between hardwood flooring and ordinary pine flooring; that there is a big difference in the cost of bathroom fixtures, which can be expensive, depending upon what is wanted; that while *402 an "ordinary" house could be built for $2,000 a room, plaintiffs' house was different from an ordinary house because it has hardwood floors, linoleum, fastener plates, a 10 inch wall, a large footing, a large porch with a roof, and a fireplace.
Dreckshage also offered the testimony of Norbert Wetter who testified that plaintiff Richard Maas, in ordering an item from the lumber company which was to go into the house, said to the lumber company employee "Just charge it to Dreckshage, it is time and material anyway, and it will be all on one bill."
After fully reviewing all of the evidence it is our conclusion that plaintiffs failed to sustain their burden of proving by a preponderance of the credible evidence the existence of a contract to build the house for a maximum sum of $10,000. On the contrary, we conclude that there is sufficient credible evidence in this record to support a finding that the contract obligation was to build a house on the basis of time and materials. It is difficult to believe that the parties would have arrived at the definite figure of $10,000 without building specifications. In evaluating the testimony it is difficult to escape the conclusion that before committing themselves to pay up to $10,000 the owners would have insisted upon definite itemization and specification of what they were going to get for their money. Just as surely the contractor would have insisted on specifications. It is not reasonable that plaintiffs would have bought "a pig in a poke", or that defendant Dreckshage would have obligated himself to build a building with a comparatively small maximum ceiling price with the extent of his obligation remaining vague, uncertain and wholly indefinite. See Crone v. Amado, 69 Ariz. 389, 214 P.2d 518.
Taking into account all of the testimony in which the figure $10,000 is referred to, in conjunction with the other evidence in the case, it appears to this court that the minds of the parties never met on that figure or on any specific maximum cost; that the naming by Dreckshage of the figure $10,000 was nothing more than the giving of an approximate estimate of the cost of building the most inexpensive type of house, and not a definite commitment to build the house that was actually built. See Weibert v. Hanan, 136 App.Div. 388, 121 N.Y.S. 35, loc. cit. 36. The practical construction of the contract as attested by the conduct of the parties indicates that plaintiffs understood it to be a time and materials job. There is substantial evidence that either plaintiffs or the mother-in-law, Mrs. Dudley, made the contracts for the painting, for the bathroom fixtures and for the furnace, without previously consulting Dreckshage; that after the roof was on, and on several occasions during the progress of the work, Richard Maas asked Dreckshage how much the house was going to cost; that Richard Maas admitted to Norbert Wetter that it was a time and material job; that changes were made in the size of the kitchen and the size and type of the living room windows; that the kind of flooring was not agreed upon until the time the house was plastered; that after Richard Maas moved in the house he came to Dreckshage and "demanded to know what the price of his house was going to be"; that when the bills totaled between $13,500 and $14,000 Maas made no immediate claim that his liability was limited to $10,000 but merely stated that he did not have the money and would have to talk to Mrs. Dudley, who was financing him, and that as to Dreckshage he would "let him know."
Finally, we are fortified in our conclusion as to where the truth lies by the fact that the trial chancellor, who had an opportunity far superior to ours to judge the credibility of the witnesses and the weight and value to be given to their testimony, reached the same result on sharply conflicting testimony. Since the solution of this case depended largely on the credibility of the witnesses and the evaluation of their testimony we defer to the trial court's findings. Fitzgerald v. Schaefer, Mo.App., 216 S.W.2d 939, loc. cit. 940, 941.
Appellants claim, however, that the judgment should be reversed for the reason that the trial court failed to make a specific *403 finding of fact with respect to the terms of the oral contract, which constituted "the most essential element of the case," so that there is no basis for the judgment.
We are required to deny this claim for three reasons:
(1) Appellants failed before final submission of the case to request the court to make a finding of fact with reference to the terms of the oral contract, and therefore cannot raise the question. Messina v. Greubel, 358 Mo. 439, 215 S.W.2d 456, loc. cit. 459. At the close of all the evidence a colloquy occurred between court and counsel in which the court asked if counsel wanted to file briefs. Counsel agreed that "it is a question of fact." The court asked counsel how much time they wanted to file their proposed findings of fact. Counsel for appellants asked for 30 days. The court then said: "The plaintiffs given twenty-five days to file briefs and the defendant twenty days to reply." We were informed in oral argument that counsel for appellants therafter filed proposed findings of fact with the trial court, but all of these facts put together do not amount to a "specific request before final submission of the case" for a finding of fact on the principally controverted fact issue, within the meaning of § 510.310(2), RSMo 1949.
(2) Furthermore, the trial court, having found for defendant Dreckshage and against plaintiffs, is deemed to have found the facts with reference to the terms of the oral contract in a manner consistent with the contentions of defendant Dreckshage, because of the provisions of the last sentence in § 510.310(2), supra, that "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached."
(3) Finally, in the prefatory paragraphs of the final decree of 22 June 1950, there is a finding of fact that the parties "made and entered into an oral agreement * * for furnishing the materials and labor for the building and erection of a five room frame house with bath to be built and erected on the lot of ground hereinabove described. * * * that at the special instance and request of the plaintiffs and under an oral agreement with them, defendant Clinton Dreckshage furnished to and for said buildings the materials and performed all of the work necessary to build and erect said house, * * *." The language of the decree follows that of the allegations in Dreckshage's cross-bill setting up his theory of the case. Plaintiffs did not interpose any objection to the sufficiency of the cross-bill to state facts showing that the pleader was entitled to relief. The findings of fact in the decree at bar were sufficient.
Appellants contend that in several other respects the decree is defective. It is objected that the decree credits appellants with the payment of only $6,096.50 whereas canceled checks totaling $7,000 were admitted by Dreckshage to have been received. This is due to the fact that Dreckshage paid $903.50 for the furnace out of the $7,000 paid him. In asserting his lien claims (which, before credits, amounted to $12,428.81) Dreckshage did not include the cost of the furnace. Thus appellants have received full credit for the $7,000 and are not prejudiced in this connection.
It is objected that the decree failed to give credit to appellants for $2,900, deposited with the court, and $100 which they say was the cost of installing front and back steps and repairing the defectively built roof. While the decree is silent as to the $2,900 deposited in court, appellants are not prejudiced thereby because they are at liberty to withdraw that amount from the registry of the court at any time, or to order it applied to the payment of the judgment rendered against them. The fact that the court says nothing in its decree with respect to the $100 is indicative of the fact that the court either disbelieved plaintiffs' testimony relative thereto, or found no obligation resting on Dreckshage under the contract to build steps or repair the roof. Fact issues on which no findings are made are deemed found in accordance with the result reached. Decker v. Evans, Mo.Sup., 221 S.W.2d 127, loc. cit. 130.
*404 It is objected that the court decreed a lien against the real estate in favor of Dreckshage for $6,312.23, and then proceeded to award the two materialmen liens in the total sum of $5,016.69 for identical items included in the Dreckshage lien, so that the decree in effect awards liens totaling $11,328.92 against the real estate. This objection is not substantial. The decree, in awarding execution in favor of Dreckshage against the real estate for his $6,312.23 judgment, directs that out of the proceeds he pay the materialmen their judgments; that the judgments of the materialmen against Dreckshage be levied first against the property of Clinton Dreckshage and that they be levied out of plaintiffs' real estate only if insufficient property of Dreckshage be found to satisfy the judgments. Obviously plaintiffs stand in no jeopardy of suffering a double recovery against them for the same items under this decree. The same contention was disallowed for the same reasons in Bailey v. Blum, Mo.Sup., 213 S.W. 849, loc. cit. 851.
It is objected that Rauch Lumber and Grocer Company is not entitled to a lien because it failed to file its lien suit within 90 days of the date its lien account was filed in the office of the circuit clerk. While it is true that its answer and cross petition was not filed until more than 90 days after it filed its lien account with the clerk, Rauch Lumber and Grocer Company did file a motion to dismiss plaintiffs' petition on the ground that the petition did not state a claim upon which relief could be granted against it. This motion was filed within 90 days after the movant's lien account was filed with the clerk. The filing of the motion to dismiss, followed by pleading in due course, was sufficient under RSMo 1949, § 429.310. State ex rel. Erbs v. Oliver, 361 Mo. 836, 237 S.W.2d 128, loc. cit. 130.
The trial court reached the right result; the decree was proper; the judgment should be affirmed, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the trial court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and GREEN, JJ., concur.